By the Court. Mason, J.
The bill in this cause was filed for the purpose of reaching certain funds received by the defendant, Jauncey, arising from the sale of cotton, delivered to and sold by him, under the circumstances hereinafter mentioned, on which the plaintiff claimed to have an equitable lien.
It appeared, from the pleadings and proofs, that the defendant, John Wood, having in the latter part of June, 1846, purchased at Savannah one hundred and five bales of cotton, which he intended to consign to the defendant, Joseph Wood, at New York, for sale; drew a bill of exchange on Joseph Wood, dated June 29,1846, at sixty days’ sight, in favor of Thomas J. Walsh or order, for three thousand dollars, which was discounted by the plaintiffs, and the proceeds applied by John Wood in payment for the cotton. The property was shipped and consigned to Joseph Wood shortly afterwards; John Wood accompanying it in the vessel in which it was brought. The draft was accepted on the 6th of July, Previous to this, on the 30th of June, Joseph Wood had become insolvent, and had executed an assignment of all his estate to the defendant, Jauncey, in trust for the payment of his debts. Among his assets thus transferred, was a debt due to him from John Wood, of about $2200. The cotton, upon its arrival at New York, was, by the consent of John Wood, placed in the hands of Jauncey, for the purpose of selling the same, and applying the proceeds in payment of the indebtedness of John to his brother Joseph. The latter also transferred the bill of lading to Jauncey. The net proceeds of the cotton received by Jauncey, amounted to $2100 and upwards, leaving a balance in the hands of Jauncey of between five and six hundred dollars beyond the amount of John’s debt to Joseph Wood.
*259 On the 30th of Sept. 1846, the plaintiffs gave notice to Jauncey that they claimed to have an equitable lien on the cotton or its proceeds, to the extent of the amount due on the bill which they had discounted, and required him to deliver up the cotton or its proceeds to them.
The ground upon which the plaintiffs in their notice claimed this lien was, that they had discounted the bill of exchange on the faith of the consignment to Joseph Wood and that out of the proceeds thereof the bill would be paid; and in their- bill of complaint, they alleged that at the time of the presentment of the bill to them for discount, it was represented to them by John Wood, the drawer, and Thomas J. Walsh, the payee, that the bill was drawn against the consignment, and would be paid out of its proceeds, and that they discounted the bill on the faith of such representation. The evidence, however, does not support the allegations of the bill of complaint in this respect to their full extent.
It abundantly appears from the testimony of all the witnesses, that John Wood had been in the habit of obtaining money from the plaintiffs by the discount of his drafts on Joseph Wood, in favor of and indorsed by Thomas J. Walsh, and that there was a general understanding between John Wood, Walsh, and the plaintiffs, that all bills thus drawn and indorsed, should be drawn on actual shipments of cotton, and should be paid out of the proceeds of the same. With regard to this particular draft, the only positive testimony is that of Elias Reed, the acting-president of the bank, who states that Walsh, the indorser, at the time of offering the bill for discount, represented to him that it was drawn on an actual shipment of cotton; and it was understood” he adds, “ that the proceeds of said shipment should be applied to the payment of the said bill.” It is not pretended that there was any express assigmnent of the proceeds of the shipment to the plaintiffs, or any order on the specific fund, much less an assignment of the bill of lading, which would have been the most obvious method of securing a lien in their favor. There was nothing more in this case than the understanding testified to by the president. He does not say that there was an agreement to that effect with Walsh, nor does he state that there was any *260 understanding or agreement between the bank and John Wood, touching this particular shipment, nor does it appear that Walsh was authorized to make any agreement on the subject. For aught that appears, it may have been, and probably was, the understanding of the witness alone, based upon the general understanding that had existed with regard to all bills drawn by John Wood on Joseph Wood, and which was nothing more than an assurance on the part of Wood, that all bills presented for discount should be based on actual transactions, and should not be accommodation bills only. So that even admitting that such verbal understanding made before the bill was discounted, would have operated as an assignment of the proceeds of the cotton, there is no evidence of such an agreement with John Wood.
It was next insisted, that the bill or draft, having been drawn against a consignment, was of itself an equitable assignment by the drawer, of the property or its proceeds.
This is certainly carrying the doctrine of equitable assignment very far, and is in our judgment entirely unsupported by authority. In the cases cited by the counsel, and in all the other cases where an order has been held to be an equitable assignment of a particular fund, the fund has been specified in the order, and the party giving the order has thereby divested himself of all right to control the fund purporting to be assigned. The form of the assignment is immaterial, but these two ingredients first named are essential. (Yates v. Grove, 1 Ves. Jr. 280; Watson v. Duke of Wellington, 1 Russ. Mylne 602, 605; Lett v. Morris, 4 Simons 607; Burn v. Carvalho, 4 My. & Cr. 690; Malcolm v. Scott, 3 Hare 39; Rogers v. Hosack's Executors, 18 Wend. 329; Philips v. Stagg, 2 Edw. Ch. R. 108.)
A bill of exchange however, and the instrument in question is nothing more nor less, differs essentially from such an order. It must be payable at all events, and not out of a particular fund. If its payment is contingent, either with regard to the event or the fund out of which it is to be made, it is not a bill of exchange, but an order or assignment of a fund. The converse of this is also true, that if the instrument be a bill of exchange, it is not an assignment of a fund. The plain distinction between *261 orders to pay out of a particular fund and bills of exchange, obtains at law, as may be seen from the case of Cowperthwaite v. Sheffield, decided in this court, (1 Sand. Sup. C. R. 416.) (a) In that case bills had been drawn by James and John Reid, of Mobile, on Wm. Kelly & Co. of Glasgow, against cotton shipped to them by the drawers; and it was contended that the bills operated as an assignment of so much of the proceeds of the -cotton, in the hands of the drawees, as would be sufficient to pay the bills. The court held, that if they had been in the form of orders for the entire proceeds of the cotton in Kelly’s hands, they might after notice to the Kelly’s have operated as an assignment of such proceeds; but then they would not have possessed the characteristics of bills of exchange. It is true that the bills in that case were not accepted by the Kelly’s after they received the cotton; and that at law an action cannot be maintained on such an order against the drawer, unless he accept the order, or in some way consent to the appropriation. But that circumstance does not affect the principle of the decision. We cannot, therefore, sustain the plaintiffs’ claim on the ground of the bill being an equitable assignment. To do so would bo to disregard some of the oldest and best established principles of law on this subject.
The plaintiffs next contended, that, upon discounting the bill in question, they acquired an equitable vested interest in or lien upon the cotton or its proceeds, which constituted a trust fund in the hands of the defendant Jauncey, applicable to the payment of the bill; and the cases of Moses v. Murgatroyd, (1 J. C. R. 129;) Bank of Auburn v. Throop, (18 J. R. 505;) and Curtis v. Tyler, (9 Paige 432,) were referred to in support of this proposition. The principle on which these cases were decided is, that when a surety, or a person standing in the situation of a surety, for the payment of a debt, receives a security for his indemnity, the principal creditor is entitled to the benefit of that security. Thus, in the case of Moses v. Murgatroyd, the plaintiffs who were holders of Ogden’s notes indorsed by Mur *262 gatroyd, were held to be entitled to payment out of property which had been specially assigned by Ogden to Murgatroyd as an indemnity against his indorsements; and the other cases cited were decided on the same principle. Mr. Justice Harris, in overruling the demurrer to the bill in this cause, (1 Barb. Sup. C. E. 486,) held the rule to be applicable here. He remarked that the proceeds of the cotton, if received by Joseph Wood, would have constituted in his hands a trust fond applicable to the payment of the draft; that it was not denied that as between him and John Wood, the party providing the fund for a specific object, such application could have been enforced. If the fact had turned out to be that John Wood had provided the fund, or, in other words, had consigned the cotton for the specific purpose of paying the draft, and it had come into Joseph Wood’s hands, and been received by him under an express agreement to that effect, the consequence stated by the learned judge would undoubtedly have followed. The property would then have been held by Joseph Wood in trust, and the plaintiffs, as holders of the bill, would have been entitled to the benefit of it. (Ex parte Prescott, 3 Deac. & Chitty, 218.) But the facts of the case, as they appear in the pleadings and proofs, do not warrant the application of this principle. There is no evidence that John Wood, when he consigned the cotton, made a special appropriation of the proceeds to the payment of this draft; or that Joseph Wood, when he accepted the draft, came under any engagement in regard to the proceeds. As far as these two parties are concerned, the shipment appears to have been made in the customary way, and not to have been attended with any circumstances creating any different relation between them, than that of principal and factor. It is indeed true, that Joseph Wood, by accepting the draft, acquired a right to retain the property, when it should come into his possession, or its proceeds, for his indemnity. But it by no means follows, that, on receiving the property, he became, without any agreement on his part, boimd to apply the proceeds specifically to the payment of this particular draft. He had a right to apply them to the payment of his general balance, or in any other way that John Wood and he might agree upon. (Schimmelpennich v. Bayard, *263 1 Peter’s R. 264; Cowperthwante v. Sheffield cited above.) In fact, the proceeds were applied in the first instance to the payment of the indebtedness of John Wood to Joseph Wood, and with his consent; and, in mating this appropriation, the parties were folly justified by the well known rules of law on the subject.
The bill must be dismissed with costs.(a)

 Affirmed in the court of appeals, 3 Comst. 243.

 In the case of Winter v. Drury and Clark, decided by the same justices on the same day that the foregoing opinion was pronounced, it was contended, that a bill of exchange is an equitable assignment of the funds of the drawer in the hands of the drawee, in such a sense as to give to the payee a lien "on those funds, to the amount of the draft, if the drawee have so much, or to the whole amount, if it be less than the draft. And that, if not against the drawee, yet the lien on the fond would be maintained, if the money came back into the hands of the drawer. Mason, J. delivered the opinion of the court, and referring to the preceding case, the court held, that there was no such lien effected by drawing a hill of exchange.
E. Sandford, for the complainant.
R. Goodman, J. T. Brady, for the defendants.