By the Court. Duer, J.
Many exceptions were taken on the trial, to the ruling of the Judge, upon questions of evidence, which the conclusions, at which we have arrived in relation to his charge, render it unnecessary to consider. It is not at all probable *581 that, upon the new trial which it will be our duty to grant, the same questions will again be raised.
There are, however, one or two exceptions which it will be expedient to notice.
We think that the rejection by the Judge of the evidence that was offered to prove that the representations made by Kagy to defendants, upon the faith of which they were induced to accept the bills in suit, were false and fraudulent, was an error. The rejection was upon the ground that it was also necessary to show, that the facts meant to be proved were known to the plaintiffs, but unless the plaintiffs were holders of the bills in suit for value, their knowledge of the facts was unimportant. Had it been admitted, or incontrovertibly proved that they were such holders, the rejection of the evidence would have been proper, but so long as their right to be protected as such holders was controverted, the evidence was clearly admissible. It was admissible for the purpose of proving the fraud of Kagy, and of throwing upon the plaintiffs the burden of proving the consideration upon which they had received the bills.
We think, also, that Reber and Arnold, notwithstanding they were the sole proprietors of the bank in whose names the action is brought, were properly admitted as witnesses. We are unable to see upon what grounds, in consistency with the decision of this court in the case of The Washington Bank v. Palmer, (2 Sandf. S. C. Rep. 686,) and of the Court of Appeals in that of The Montgomery County Bank v. Marsh, (3 Selden, 488,) they could have been excluded. When the action is brought in the name of a bank, the stockholders, however few in number, are not parties to the action, nor is it for their immediate benefit, that it is prosecuted. They have no immediate personal right to the moneys that are sought to be recovered, but in all cases, those moneys belong to the bank as a corporation, and the interest of the stockholders is future and contingent.
I pass now to the charge of the Judge.
He submitted to the determination of the jury the following questions of fact:—Whether the drafts of the 2d of January were discounted by the plaintiffs upon the faith of the letter alleged to have been written by the defendants to Kagy, by which they promised to accept his drafts upon his remittance of bills of lading *582 of hogs, or of Ohio currency. Whether, in compliance with the terms of the letter, hogs, equal in value to the amount of the drafts were in fact sent forward by Kagy, and received by the defendants previous to their acceptance of the bills in suit. Whether their acceptance of the bills in suit was procured by false representations or promises made by Kagy, and whether the plaintiffs, without notice of such false representations or promises, parted with value when they received the bills in suit, or at that time gave up, or lost their remedy upon, any other security. And in instructing the jury as to the law applicable to these questions, the learned Judge, in effect, told them, that if they were satisfied that the letter in question, was, in fact, written by the defendants, and that the plaintiffs had advanced their money upon the faith of the promise that it contained, and that the terms of the letter had been substantially complied with, then the defendants were bound to accept the drafts of the 2d of January, and that this obligation was alone a full consideration for the acceptance by the defendants of the bills in suit, so as to entitle the plaintiffs to recover, even upon the sripposition, that the acceptance of the defendants upon the bills had been procured by fraud, and that the plaintiffs had parted with no value or security when they received them. We have found ourselves unable, after a repeated perusal, to give any other interpretation to the charge than that which has now been stated, and we are satisfied that, if faithfully reported, it was in this sense that it must have been understood by the jury.
If the jury had been required to answer, separately, the questions of fact that were submitted to them, and had found that the acceptances of the defendants were not procured by fraud, or that the plaintiffs were Iona fide holders, for value, their verdict, unless it could have been set aside as against evidence, would have entitled the plaintiffs to the judgment which they claim, but it is a general verdict only that was rendered by the jury, and this may have proceeded upon the sole grounds that the plaintiffs had advanced their money upon the faith of the letter, and that the terms of the letter had been complied with. Hence, if they were wrongly instructed as to the law applicable to these facts, their verdict, whether sustained by the evidence or not, must be set aside for the misdirection of the Judge. That, to this extent, the *583 jury were wrongly instructed, is the conclusion to which our reflections, and examination of the law, have led us.
Conceding, for the purposes of this decision, that the facts relied on, as creating the obligation were fully proved, we are of opinion that the defendants were not bound to accept the drafts of the 2d of January; and if we concede that this obligation existed, we are of opinion that it was not alone sufficient to entitle the plaintiffs to recover in the present action.
If the defendants were liable at all, by force of a promise to accept the drafts of the 2d of January, they were so, either upon the ground that the promise was equivalent to an actual acceptance, or made them answerable, in damages, for their refusal to perform it, and we can see no reason for doubting that it is by the provisions of the Revised Statutes relative to bills of exchange, that the question of their liability upon either ground, must be determined. Those provisions manifestly embrace all bills, wherever drawn, that are to be accepted and paid within this state;* and were the terms of the statute less explicit than they are, the general rule of law would lead us to the same conclusion: that the validity of a promise to accept a bill of exchange, depends upon the law of the place where the bill is to be accepted and paid. Such was the express decision of the Supreme Court of the United States, in the case of Boyce v. Edwards, (4 Peters, 111,) and we deem it needless to refer to any other authorities. The bills which the defendants, in that case, had promised to accept, were drawn in Georgia, but were to be accepted and paid in South Carolina, and the court held, that, as the contract was to be executed in South Carolina, the law of that state governed its construction.
The only statutory provisions which are applicable to the question, are found in the 8th and 10th sections of the title, in the Revised Statutes, “ Of promissory notes and bills of exchange.” (1 R. S.p. 768.) The 8th section declares that “an unconditional promise, in writing, to accept a bill before it is drawn, shall be deemed an actual acceptance in favor of every person who, upon the faith thereof, shall have received the bill for a valuable consideration,” and the 10th section, in effect, gives a right of action to “ any person to whom a promise to accept a bill may have been *584 made, and who, upon the faith of such promise, shall have drawn or negotiated the bill, to recover damages of the party making such a promise, upon his refusal to accept such bill.” If the defendants were bound to accept the bills of the 2d of January, they were so by force of the provisions in one or other of these sections ; that is, either as actual acceptors, or upon their refusal to accept; and if the evidence shows that these provisions cannot be applied to create the obligation, it is a necessary conclusion that none existed. It is needless to inquire whether the defendants would have been liablé, at common law, for the new statutory provisions, as the terms in which they are expressed, and the original notes of the revisers, plainly show, were designed to supersede the rules of the common law, and to rescue the whole subject of the acceptance of bills, foreign as well as inland, from the difficulties in which conflicting decisions had involved it. (3 Rev. Stat. 2 ed., revisers’ note, p. 609.)
Looking, then, at the evidence in the case, and giving to it that construction upon which the counsel for the plaintiffs have insisted, it seems to us exceedingly clear, that the defendants were not liable to the plaintiffs upon the drafts of the 2d of January, either as actual acceptors, or for their refusal to accept them. They were not liable, as acceptors, under § 8, since their promise to Kagy, although in writing, was not, as the statute requires, unconditional, but was subject to the condition precedent of a timely remittance of bills of lading, or of Ohio currency. Nor can it be said that the nature of the promise was at all changed by the alleged fact, that the condition upon which it depended was substantially performed. To create a liability to third persons, under the statute, it is plainly necessary that the promise, upon the faith of which they advance their funds, shall be unconditional in its original form—not be freed from a condition annexed to it by a subsequent act, or event. Hence, although the performance of the condition annexed may have rendered the promise of the defendants absolute in. respect to Kagy, we cannot hold that it operated to alter or enlarge the rights of the plaintiffs.
Nor can we hold that the defendants rendered themselves liable to the plaintiffs under § 10 of the statute, by their refusal to accept the bills of the 2d of January in conformity to their promise; for although, by the terms of that section, the promise to which it *585 refers is not required to be in writing, or unconditional, yet it is only by the person to whom the promise was made, and who, upon the faith of it, shall have drawn or negotiated a bill, that an action for the recovery of damages, upon a refusal to accept, can be maintained. Here, the promise of the defendant was made, not to the plaintiffs, but to Eagy, and it was not by the plaintiffs that the bills were either drawn or negotiated. It is true, they were endorsed by the cashier of the plaintiffs, but they were endorsed to Arnold, Dunlevy & Go., merely as agents for collection, and not for a valuable consideration; they were not negotiated, within the meaning of the law, for the title remained in the plaintiffs.
It may possibly be said, that, as the defendants were in possession of adequate funds, when the bills of the 2d of January were presented for their acceptance, this fact was alone sufficient to create an obligation to accept them, but the law is well settled, that although the refusal of the drawee to accept, who has funds in his hands which he ought to apply to the payment of the bill, may render him liable in damages to the drawer, there is no such privity between him and the holder of the bill, as can entitle the latter to maintain an action against him.
A bill of exchange, in the proper sense of the term, never operates as an assignment of the fund against which it is drawn, and when there has been no binding promise to accept, and no express agreement by which a trust has been created, it is only by a positive acceptance, in the form which the statute prescribes, that a right of action against the drawee can accrue to the holder. (Cowperthwaite v. Sheffield, 1 Sand. S. C. R. 436, and 3d S. C. Comst. 243; Marine and Fire Ins. Bank v. Jauncey, 3 Sandf. 259; Winter v. Drury, id. 261; S. C. 1 Selden, 525. Vide, also, Williams v. Everitt, 14 East. 582; Yates v. Bell, 3 B. & Ald. 643.)
Had it been possible for us to hold that the defendants were under an obligation to accept the bills of the 2d of Januaiy, we could not have said that this obligation was of itself sufficient to render them liable, as acceptors of the bills in suit, if their acceptances on these were in reality procured by fraud, and the plaintiffs are not entitled to protection as holders for value. Upon this state of facts, we must have held that the acceptances, upon which this action is brought, were vitiated by the fraud by which they were obtained, and that the sole remedy of the plaintiffs against the de *586 fendants, is upon the drafts of the 2d of January; that is, either upon the drafts themselves, or upon the refusal of the defendants to accept them. It cannot be pretended that the supposed liability of the defendants, upon these drafts, was the consideration which, in fact, induced them to accept the bills in suit, for the evidence clearly shows that this liability they constantly denied. We cannot, therefore, understand how a liability which, if it existed, was denied, could be urged to invalidate the defence of fraud, that must otherwise have prevailed.
The charge of the learned Judge was, therefore, erroneous, and calculated to mislead the jury, even upon the supposition that he was justified in holding that the defendants were bound to accept the drafts of the 2d of January, if the facts in relation to them were such as the plaintiffs alleged. Hence, whether such was or was not the obligation of thé defendants, we are satisfied that the jury were misdirected as to the law, and consequently that a new trial must be ordered.
The result of the next trial will, in our opinion, depend upon the answers to be given by the jury to the following questions:—■
1st. Were the acceptances of the defendants upon the bills in suit procured by Kagy by a false representation of existing facts, or by promises which he knew that he could not fulfil ?
2d. Were the bills in suit received in good faith by the agents of the plaintiffs, as a substitute for the drafts of the 2d of January, or merely as a collateral security for the ultimate payment of those drafts ? and
3d. Was there any agreement for the extension of credit to the parties on these drafts, drawer or endorsers, by which they were discharged ?
In stating these to be the only questions that, in our judgment, upon the next trial ought to be distinctly submitted to the jury, we are not to be understood as saying, that the evidence given on the former trial, in relation to the drafts of the 2d of January, and the circumstances under which they were drawn and presented for acceptance, ought hereafter to be wholly excluded, since it is obvious that this evidence, or portions of it, may have an important bearing upon the determination of the questions to be submitted as they are now framed, especially upon the questions of actual fraud, and of a parting with value.
Hew trial granted, costs to abide the event.

 Vide Blakiston v. Dudley, ante p. 373.