# THE PEOPLE OF THE STATE OF NEW YORK v. E. REMINGTON & SONS.

*Insolvent corporations — preference given to employees and laborers, for wages, by chapter 376 of 1885 — not applicable to wages earned before its passage — the preference is not assignable prior to the appointment of a receiver — not transferred by orders of laborer — it is lost by accepting the note or check of the company in place of such orders — a superintendent, attorney, or agent selling on a commission is not preferred by the statute.*

A judgment having been entered in this action adjudging that the defendant corporation (organized under chapter 40 of 1848) was insolvent, and directing that its property be converted into money and distributed among its creditors,

various persons presented claims to the receiver claiming that they were to be paid in preference to every other debt or claim, under the provisions of chapter 376 of 1885, which took effect on May, 1885, and reads as follows: " Where a receiver of a corporation, created or organized under the laws of this State, and doing business therein, other than insurance and moneyed corporations, shall be appointed, the *wages of the employees, operatives and laborers* thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

Upon an appeal from an order made at a Special Term allowing certain of these alleged preferred claims and disallowing others:

*Held*, that as this statute confers upon a class of persons, having a specified contractual relation with corporations, new and unusual privileges and securities which diminish the rights and securities of all persons having claims, not within the favored class, it is in derogation of the common law and it should not be extended to cases not within the reason as well as within the words of the statute, nor should it be given a retroactive effect.

That wages earned by and due to laborers prior to the passage of the act were not entitled to a preference.

That orders drawn on the defendant by laborers, to whom the corporation was justly indebted for wages earned since the passage of the act of 1885, requesting the defendant to pay to a person therein named a certain sum of money and charge the same to the account of the drawer, did not effect an assignment of the wages due to the drawer, and that the payees therein named were not assignees of the wages of the laborers or entitled to be preferred under the act.

That the preference secured by this statute is not a lien upon the property of the corporation, and does not become a vested, potential or expectant legal right until a receiver is appointed.

That before the appointment of a receiver laborers have no right or interest capable of assignment, but that after or at the very moment of his appointment the preference springs into existence and becomes a legal right, which is assignable.

Upon the surrender of orders, drawn by laborers for wages due to them, by the payees therein named, the defendant charged them to the accounts of the drawers, and, at the request of the payees, credited the payees with the amounts of the orders upon open accounts with them, or gave to them its promissory notes for the aggregate amount of several such orders, due three months after date, or its checks therefor drawn on its banker. The said accounts, notes and checks being unpaid at the time of the appointment of the receiver, the owners thereof claimed a preference under the act.

*Held*, that when the payees surrendered these orders to the defendant, and received in lieu thereof its promise to pay the sums, three things were accomplished:

*First.* The laborers' debts were wholly or partly paid.

*Second.* The laborers' wages were, to the amount represented by the surrendered orders, paid and discharged.

*Third.* The defendant, by its new promises, became indebted to third persons. That the preference was extinguished.

Laborers to whom the defendant was indebted for wages, accruing subsequent to the passage of the act, received from it its promissory notes, on time, which notes were by the laborers duly transferred to third parties, who now hold the same for value.

*Held,* that the preferences created by the statute were not thus assignable, and these claimants were not entitled to a preference. (MERWIN, J., dissenting.)

Laborers in payment for merchandise then sold and delivered to them by a merchant, drew and delivered to the merchant an order on the defendant for a portion of the wages then due and earned after the passage of the act, which the merchant never presented but still continues to hold, the amount thereof appearing on the book of the defendant to the credit of the laborer.

*Held,* that the orders did not amount to an assignment of the whole or any portion of the sums due from the defendant to the drawers; and further as the preference given by the statute was not assignable, prior to the appointment of the receivers, these claimants were not entitled to a preference. (MERWIN J., dissenting.)

Persons who had received orders from defendant's superintendent, who was employed at an annual salary, and from an attorney, to whom the defendant was indebted for professional services, surrendered such orders to the defendant, and received in exchange its promissory notes due three months from date, which remained unpaid when the receiver was appointed.

*Held,* that the holders were not preferred, under the statute, because:

*First.* The superintendent and attorney were not "employees, operators or laborers," nor were their earnings "wages," within the meaning of the statute.

*Second.* Their earnings were not assigned to the holders of such orders but were, by the surrender of the orders, paid by the defendant.

*Third.* Prior to the appointment of the receivers the superintendent and attorney could have had no preference which was assignable.

Claims were presented by persons to whom the defendant furnished stock from which, rooms in which, and power and machinery with which to manufacture parts of machines and implements, for which manufactured articles defendant agreed to pay a fixed price, said persons employing, discharging and paying their own laborers.

*Held,* that such persons were not entitled to a preference under the statute.

The cases bearing upon this question collated and considered.

A claim was presented by a person who had been employed upon an annual salary of $2,000, with a commission of two per cent, to sell goods in China, the defendant paying all necessary traveling expenses.

*Held,* that neither the salary nor the commissions were wages within the meaning of the statute.

APPEALS from an order made at the Jefferson county Special Term and entered in Herkimer county, allowing and disallowing claims presented to the receivers of the defendant cor-

poration, by creditors who claimed to be entitled to a preference over all other creditors under the provisions of chapter 376 of 1885.

April 20, 1886, this action was brought under sections 1785 and 1786 of the Code of Civil Procedure, by the attorney-general, to procure a judgment dissolving the defendant (a corporation organized under chapter 40, Laws of 1848, and the laws amendatory thereof and supplementary thereto), and distributing the avails of its property among its creditors, because it then was, and for at least one year had been, insolvent, and during that time had neglected to pay and discharge its notes and other evidences of debt. By an order dated April 21, 1886, Addison Brill and Albert N. Russell were appointed temporary receivers of defendant's property pursuant to section 1788. At the same date a temporary injunction was issued in the action restraining defendant's officers and creditors pursuant to sections 1787 and 1806. The defendant made default in the action, and June 5, 1886, a judgment was entered adjudging that defendant then was, and had been for at least one year, insolvent, that it had forfeited its corporate rights, and directing that its property be converted into money and distributed among its creditors. By this judgment, said temporary receivers were continued as permanent receivers, pursuant to section 1788, and the temporary injunction of April 21, 1886, was continued. Various persons claimed to be preferred, under chapter 376 of the Laws of 1885, which took effect May 29, 1885. A reference was ordered to ascertain the facts; and upon the coming in of the referee's report, the Special Term, by an order granted March 12, and entered March 19, 1887, disallowed the claims of all persons except those embraced within classes 11, 12 and 13, which were allowed.

No appeal has been taken from the allowance of the claims embraced within classes 11 and 12, which embraces the cases of employees or laborers to whom the defendant was indebted for wages due for services rendered subsequent to the passage of the act for which the corporation had executed and delivered its promissory notes on time, which notes have not been paid. The notes in one case not bearing interest, and being issued purely for the accommodation of the defendant and in the other bearing interest and issued at the request of the employee or laborer. The people and the receivers appeal from the allowance of the claims embraced

within class 13 ; and the claimants embraced within the rejected classes appeal from the parts of the order rejecting their claims.

*Edwin H. Risley* and *Mead & Stranahan,* for claimants, appellants.

*The Attorney-General,* for the plaintiff, respondent.

*Francis Kernan* and *Thomas Richardson,* for receivers, respondent.

FOLLETT, J. :

Chapter 376 of the laws of 1885, provides : " Where a receiver of a corporation created or organized under the laws of this State, and doing business therein, other than insurance and moneyed corporations, shall be appointed, the wages of the employees, operatives and laborers thereof shall be preferred to every other debt or claim against such corporation, and shall be paid by the receiver from the moneys of such corporation which shall first come to his hands."

The defendant, from time to time became indebted to its laborers in divers sums for wages earned after the passage of said act, and before the appointment of said receivers ; against which sums so due to the laborers they were accustomed to draw orders on defendant due on demand, payable to the order of merchants and dealers for small sums, which orders were delivered to the payees by the laborers in payment for goods then or previously purchased. Upon the presentation of such orders the defendant charged them to the accounts of the drawers, and in the cases embraced within class number 1, credited the payees with the amounts of their orders upon open accounts ; upon which accounts the defendant was indebted to the claimants embraced in this class when the receivers were appointed.

In the cases embraced within class 2, the orders so drawn by the laborers and charged to them by the defendant, were aggregated from time to time by the payees and the defendant; and thereupon the payees received the defendant's promissory notes due three months after date, for the amounts so aggregated ; which notes were unpaid when the receivers were appointed.

In the cases embraced within class 3, the orders so drawn by the laborers and charged to them by the defendant, were credited

by the defendant to the payees; who from time to time drew their orders on defendant to the order of other persons, by whom such second orders were presented to the defendant, the amounts aggregated from time to time, and thereupon the payees received the defendant's promissory notes due three months after date, for the amounts aggregated; which notes were unpaid when the receivers were appointed.

In the cases embraced within class 5, the payees of defendant's notes taken in exchange for the orders of laborers, received from defendant part payment of said notes, and defendant's new notes for the remainder, due three months after date; which new notes were unpaid when the receivers were appointed.

In the cases embraced within class 6, the payees of notes which were received in exchange for the orders of laborers, accepted, at the maturity of the notes, defendant's checks on its banker for the amounts of the notes, which checks were dishonored and unpaid when the receivers were appointed.

In the cases embraced within class 7, the payees of defendant's promissory notes given in exchange for the orders of laborers, drawn in favor of said payees, had indorsed and negotiated said notes before due, to indorsees for value received, who purchased the same in good faith; which notes were unpaid when the receivers were appointed, have been dishonored, duly protested and are now held by said indorsees.

In the cases embraced within class 8, the indorsees of notes which were received in exchange for the orders of laborers, at the maturity of said notes, accepted of defendant new notes, on time, in lieu of the original notes, and thereby releasing the indorsers upon the original notes which new or substituted notes were unpaid when the receivers were appointed, have been dishonored, duly protested and are now held by said payees.

In the cases embraced within class 16, the defendant's promissory notes drawn on time, partly in payment for goods sold by the payees to the defendant, and partly in exchange for the orders of laborers, drawn to the order of said payees on said defendant, were unpaid when the receivers were appointed and have been dishonored.

Class 17 embraces claims which arose by payees of laborers

orders surrendering them to defendant and receiving credit therefor in an open account containing credits for goods sold to defendant by said payees; against which said creditors, under said account, so created, drew orders on said defendant to the order of various drawees; who afterwards surrendered their orders to defendant and received credit therefor on defendants' books, upon which accounts so last created, the defendant was indebted when the receivers were appointed.

Class 18 embraces claims which arose by the payees of laborers' orders surrendering them to defendant and receiving credit therefor in an open account, against which said creditors, under said accounts so created, drew orders on defendant to the order of various drawees, who afterwards surrendered their orders to defendant and received credit therefor on defendant's books; upon which accounts so last created, the defendant was indebted when the receivers were appointed.

These orders are payable generally, and not out of a particular fund. Orders for the payment of money on demand do not effect an assignment of funds in the drawee's hands sufficient to pay them unless the orders are, by their terms, payable out of a particular fund specified in the orders. (*Kelley* v. *Mayor*, etc., 4 Hill, 263.; *Marine and Fire Ins. Bank* v. *Jauncey*, 3 Sandf., 257; *Hutter* v. *Ellwanger*, 4 Lans., 8, 13; *Munger* v. *Shannon*, 61 N. Y., 251, 255; *Shaver* v. *Western Union Telegraph Co.*, 57 id., 459, 464; *Attorney-General* v. *Continental Life Ins. Co.*, 71 id., 325, 328; *Brill* v. *Tuttle*, 81 id., 454, 457; Pom. Eq. Juris., § 1280.) If the defendant had accepted of these orders in writing, it would have been liable for their full amount, even though the drawers had not sufficient funds to their credit to pay them. The drawee of an order, payable out of a particular fund, which operates by way of an assignment, is not liable for more than the amount of the particular fund. This difference is said to be a sure test for determining whether an instrument is an assignment or a bill of exchange. (*Munger* v. *Shannon, supra;* Pom. Eq. Juris., § 1280.) These orders being, in legal effect, bills of exchange, the payees could not have maintained actions on them against the defendant, though in funds, until it had accepted them. (1 R. S., 768, § 6; *Ætna Nat'l B'k* v. *The Fourth Nat'l B'k*,

46 N. Y., 82; *Duncan* v. *Berlin*, 60 id., 151.) When a bill of exchange, or an order, payable generally, is accepted, the holder's right of action is on the acceptor's new promise, and not as assignee of, and upon the acceptor's old promise or liability to the drawer. (*Cowperthwaite* v. *Sheffield*, 3 N. Y., 243, 251; Pom. Eq. Juris., § 1284.) The claimants within these classes are not assignees of the wages of the laborers; nor did these claimants acquire a right of action on the orders against the defendant.

So far as these claimants are concerned, it is unnecessary to determine whether the preference given by this statute is assignable before receivers are appointed; but all of the claims cannot be determined without meeting this question. The preference secured by this statute is not a lien upon the property of the corporation, and does not become a vested, potential or expectant legal right until a receiver is appointed. (*Beaston* v. *Farmers Bank*, 12 Pet., 102; *Brent* v. *The Bank of Washington*, 10 id., 596; *Anderson* v. *The State*, 23 Miss., 459.) Before the appointment of a receiver, laborers have no right or interest capable of assignment. The cases arising under the manufacturers' act are not authorities for the position that the preference under consideration is assignable before a receiver is appointed. The tenth, twelfth, fifteenth and eighteenth sections of the manufacturers' act impose liabilities upon stockholders and trustees in favor of creditors and laborers. Under the tenth and eighteenth sections, the liability arises with the debt, and is attendant upon it. Under the twelfth and fifteenth sections, the liability is for existing debts, without reference to whether they are held by original creditors or assignees; it arises when the default occurs, attaches to the then existing debts and attends upon them. The preference given by this statute is, undoubtedly, assignable after a receiver is appointed, or at the very moment the preference springs into existence, and becomes a legal right. The cases in the federal courts holding that the preference given to the United States by statute, belongs to the surety who pays the debt of his principal, are not in point, because the statutes give the surety the same priority that is secured to the United States. (U. S. R. S., § 3468; 1 U. S. Stat. at Large, 676; Laws of 1799, § 65, chap. 22.) Had the laborers made formal assignments of their wages before the receivers were appointed, the assignees would not have acquired a preference.

Did the transaction amount to a payment of the wages of the laborers? When the payees surrendered these orders to the defendant and received in lieu thereof its promise to pay the sums (which promises were evidenced by its promissory notes, or by credits upon its books), three things were accomplished: (1.) The laborers' debts were wholly or partly paid. (2.) The laborers' wages were, to the amount represented by the surrendered orders, paid and discharged. (3.) The defendant, by its new promises, became indebted to third persons. This is payment by delegation, which is a kind of novation. (2 Pars. on Con., 129 ; 2 Chitty on Con. [11th Am. ed.], 1376; Dom. Civ. Law, book 4, tit. 4, art. 1, 7 [1 Cush. ed., 919, 921].) Domat and Parsons treat of delegation and novation under the head of payment. When a debt is paid, no matter how, all collateral obligations held by the creditor for the security of the debt, whether imposed by law or given by the obligor, are released, or cease to exist. (Dom. Civ. Law, book 4, tit. 1, § 1, art. 8 ; Book 4, tit. 3, § 1, art. 5 [1 Cush. ed., 894, 916].) The preference given by chapter 376, Laws 1885, is impressed by the statute upon the avails of the property of the corporation in the receiver's hands for the payment of the debts due for wages ; and whenever the wages are paid the preference is extinguished. These principles are elementary, and their statement seems to be a sufficient discussion of whether the claims embraced within classes 1, 2, 3, 5, 6, 7, 8, 16, 17 and 18 are paid.

Class 4 embraces the claims of persons who received orders from defendant's superintendent (employed at an annual salary), and afterwards surrendered such orders to defendant and received in exchange its promissory notes due three months after date, which notes were unpaid when the receivers were appointed

Class 9 embraces the claims of persons who received orders from an attorney to whom defendant was indebted for professional services, and afterwards surrendered such orders to defendant and received in exchange its promissory notes due three months after date, which notes were unpaid when the receivers were appointed.

These claimants are not preferred under the statute, because : (1.) The superintendant and attorney were not "employees, operatives or laborers," or their earnings, "wages," within the meaning of the statute. (See discussion of classes 10, 19 and 20.) (2.) Their

earnings were not assigned to the claimants, but paid by the defendant, as before shown. (3.) Prior to the appointment of the receivers, the superintendent and attorney had no preference which was assignable.

Class 10 embraces the claims of attorneys for professional services rendered, some of which have been liquidated, and others unliquidated. The liquidated claims are evidenced by defendant's promissory notes, or by credits on its books. The burden is upon persons claiming preferences to bring themselves, by evidence, within the statute. It does not appear that the attorneys were employed for any particular period, or at a price agreed upon, and the sums due them for professional services rendered upon occasional retainers, are not "wages" within the meaning of this statute. The word " wages" has a less extensive meaning, and embraces a smaller class of credits than "earnings." (*Jenks* v. *Dyer*, 102 Mass., 236; *Somers* v. *Keliher*, 115 id., 167.)

By a statute of the State of Alabama " the wages of laborers and employees" are not subject to garnishment or attachment, except for public dues. It was held (*S. & N. A. R. R. Co.* v. *Falkner*, 49 Ala., 115), that the salary of the president of a railroad company was not exempt from garnishment. It was said "the president of a railroad company cannot be said to be a laborer or employee within the meaning of this law. The term 'wages' indicates inconsiderable pay, without excluding ' salary,' which is suggestive of larger compensation for personal services. But its application to laborers and employees certainly conveys the idea of a subordinate occupation which is not very remunerative; one of not much independent responsibility, but rather subject to immediate supervision." The difference between salaries and wages is discussed in *Godwin* v. *Huff* (10 Ind., 83) and *McLellan* v. *Young* (54 Ga., 399).

Class 13 embraces the claims of laborers for wages earned and due prior to the passage of this act (May 29, 1885), and are evidenced by credits upon defendant's books. This statute confers upon a class of persons having a specified contractual relation with corporations, new and unusual privileges and securities which diminish the rights and securities of all persons having claims, and not within the favored class, is in derogation of the common law and it should not be extended to cases not within the reason, as well as within

the words of the statute, nor should it be given a retroactive effect. Statutes favoring one class at the expense of others will not be construed to have a retroactive effect unless the statute provides that it shall have such effect. (*McCahill* v. *Hamilton*, 20 Hun, 388; *People ex rel. Newcomb* v. *McCall*, 94 N. Y., 587; *United States* v. *Bryan*, 9 Cranch, 374; Potter's Dwarris Stat., 162, *note*). Wages earned by and due to laborers prior to the passage of the act are not entitled to a preference.

Class 14 embraces the claims of creditors holding the orders of laborers drawn in their favor which have never been presented to defendant. These orders not amounting to an assignment of the whole, or of any part of the sums due from defendant to the drawers (laborers), and the preference given by the statute not being assignable, these creditors are not entitled to a preference under the statute.

Class 15 embraces the claims of the holders of promissory notes given by defendant to its laborers for wages and afterwards indorsed by the laborers to the claimants. The preference created by the statute not being assignable, these claimants are not entitled to a preference under the act.

Class 19 embraces the claims of persons to whom defendant furnished stock from which, rooms in which, and power and machinery with which, to manufacture parts of machines and implements, for which manufactured articles defendant agreed to pay a fixed price. Said persons, employed, discharged and paid their own laborers. On such contracts considerable sums were due when the receivers were appointed.

A person who contracts to do a specific portion of work in constructing a railroad, and employs others to do, or aid in doing, the work, is not a laborer or servant within the tenth section of chapter 140, Laws 1850 (the railroad act). (*Aikin* v. *Wasson*, 24 N. Y., 482.)

Section 12 of the railroad act provides that if contractors fail to pay their laborers, the corporation shall be liable to pay for thirty day's labor. A laborer working with his team and his hired man, at an agreed price per day, cannot recover under this section for the labor of the team or hired man. (*Atcherson* v. *Troy and Boston R. R. Co.*, 1 Abb. Ct. App. Dec., 13; S. C., 6 Abb. [N. S.] 329; *Cummings* v. *The N. Y. and O. M. R. R. Co.*, 1 Lans., 68; *Balch* v. *The N. Y. and O. M. R. R. Co.*, 46 N. Y., 521.)

Chapter 37, 1 and 2 Will., 4 (the truck act), made it unlawful for employers engaged in certain trades to pay "the wages of artificers" in anything except the current coin of the realm. By the twenty-fifth section of the act, "all workmen, laborers and other persons in any manner engaged in the performance of any work, employment or operation of what nature soever, in or about the several trades or occupations aforesaid, shall be and be deemed artificers." Miners of coal and clay, iron-workers, knitters and weavers were within the act. A person contracted to take clay out of a cut for a certain sum per cubic yard, and employed eight or nine men to work with him. After being partly paid in coin and partly in goods, the plaintiff sought to recover in coin the part of his wages paid in goods; but it was held (*Riley* v. *Warden*, 2 Exch., 59) that he was not an artificer, or at work for wages, within the act.

PARK, B., said: "Now it appears to me that, upon the true construction of this act, it is to be taken as applicable to those persons only who strictly contract as laborers; that is, to such as enter into a contract to employ their personal services, and to receive payment for that service in wages. * * * It seems to me that this act was intended to be applied to those who engage to do a work by their own personal labor, and that the object of it is to protect such men as earn their bread by the sweat of their brow, and who are, for the most part, an improvident class, and that it was not intended to have any application whatever to persons who take work upon a great scale."

ROLFE, B., said: "It appears to me to be clear, upon looking at this act of parliament, that it applies only to those persons who are to receive wages as the price of their labor, and that the term 'wages' is to be understood in its popular sense, and does not include wages which are the price of a contract. The plaintiff here employed several persons under him, and in that respect differs from what is popularly understood by a laborer. This act was intended to protect persons who earn their bread by their daily labor from receiving goods as a payment for their wages, instead of money. It would be difficult to know where to draw the line, if we were to hold that the plaintiff falls within the meaning of the act; for it would be difficult to say that it did not apply in a case where a party had undertaken a contract to complete twenty miles

of railway. The nineteenth section seems to me to have reference to workmen and laborers who earn wages by their own personal labor, and not to those who, although they join in the work, derive a profit from the exertions of others."

In *Sharman* v. *Sanders* (13 C. B., 166), the plaintiff sought to recover wages earned in iron works. The plaintiff was employed to load, unload and burn iron stone at a certain price per ton, payable at the end of each month, the defendant finding carts and horses. The plaintiff worked personally and employed assistants, paying them weekly. The plaintiff received four-fifths of his pay in goods, and afterwards sued for coin. It was held that the plaintiff was not an artificer and not at work for wages. MAULE, J., said : "The persons the act was meant to benefit are those who hire themselves to labor with their hands for daily or weekly wages. More people, no doubt, are comprehended within it than that ; but it is that sort of people to whom the act was intended to apply. I do not think it was at all designed for the protection of persons taking contracts for labor to be done by others — persons who speculate upon the state of the labor market. The letter of the act also, in my opinion, falls short of comprehending persons of that description. I do not think the plaintiff falls within the definition of an artificer given by the interpretation clause ; he not being a workman, laborer or other person engaged in the performance of any work, employment, or operation contemplated by the statute ; for the whole context shows that it was only intended to apply to those who are actually and personally engaged or employed to do the work. And when the procuring work to be done by the hands of others comprehends the whole of what a man contracts for, the circumstance of his doing some portion of the work himself does not bring him within the statute."

In *Bowers* v. *Lovekin* (6 E. & B., 584), a contrary rule was held ; but this case was expressly overruled in *Sleeman* v. *Barrett* (2 H. & C., 934), where the rule laid down in *Riley* v. *Warden*, and in *Sharman* v. *Sanders* (*supra*), was followed, and the language of those judgments quoted with approbation. In *Ingram* v. *Barnes* (7 E. & B., 115), affirmed in the Exchequer Chamber, 132, *Riley* v. *Warden* and *Sharman* v. *Sanders* were followed, and *Bowers* v. *Lovekin* was distinguished.

Class 20 embraces the claim of Mr. Comstock, who was employed upon an annual salary of $2,000, with a commission of two per cent to sell goods in China, the defendant paying all necessary traveling expenses. There is due Comstock for commissions, earned prior to the passage of the act, $12,160, and for commissions earned since the passage of the act, $1,440, for which defendant had given . him two promissory notes dated December 15, 1885, one payable in one year, the other in three months, both with interest, and indorsed by P. Remington as an accommodation endorser. There is credited to Comstock, on defendant's books, $500 for salary earned since the act was passed. As before said, the law is not retroactive, and the commissions earned prior to its passage are not preferred by it; nor is his claim for $1,440, commissions, and $500 salary, earned since the passage of the act. Neither salary nor commissions are wages within the meaning of this act. Upon this question (see authorities cited under class 10.) Nor was Mr. Comstock an employee within the act.

A superintendent, general manager, or a general manager and book-keeper, is not a " laborer, servant or apprentice," within the eighteenth section of the manufacturing act. (*Hill* v. *Spencer*, 61 N. Y., 274; *Dean* v. *De Wolfe*, 16 Hun, 186 ; affirmed, 82 N. Y., 626 ; *Krauser* v. *Ruckel*, 17 Hun, 463 ; *Wakefield* v. *Fargo*, 90 N. Y., 213.)

In considering whether a general manager fell within the term "servant," LOTT, Ch. C., said : " The context in which it is used, in the section referred to, being associated with ' laborers ' and ' apprentices,' indicates that it was intended to apply to a person employed to devote his time, and render his services in the performance of work, similar in its general character to that done by those employees." (*Hill* v. *Spencer*, 61 N. Y., 279.)

Chapter 755, Laws 1873, conferred upon the board of police the power to fix the salaries of all clerks and employees whom they were authorized to appoint. The question arose whether the board had power to fix the salary of a police surgeon. MILLER, J., in defining the word " employee " said (*People ex rel. Satterlee* v. *Board of Police*, 75 N. Y., 44) : " Certainly they (surgeons), are not ' clerks,' and as ' employees ' are usually considered as embracing laborers and servants, and those occupying inferior positions, they can scarcely be included in that class of persons."

In *Wakefield* v. *Fargo* (*supra*), the question was whether a general manager and clerk was within the term "laborers, servants and apprentices," as used in the eighteenth section of the manufacturing act. It was said by DANFORTH, J. (90 N. Y., 218): " He (Blackstone), also speaks of stewards, factors and bailiffs, as, perhaps, constituting a fourth class (of servants). But this doubtingly, because they serve in a superior, ministerial capacity, and in view of the declarations already made by this court as to the object of the statute (*Coffin* v. *Reynolds*, 37 N. Y., 640; *Gurney et al.* v. *Atlantic & Great Western Railway Co. et al*; 58 id., 367; *Aiken, Admr.* v. *Wasson*, 24 id., 482; *Stryker* v. *Cassidy*, 76 id., 53; 32 Am. Rep., 262), it may be added that as such individuals occupy positions, and are usually of such capacity as enable them to look out for themselves, they are not within the privilege of the statute. To the language of the act must be applied the rule common in the construction of statutes, that when two or more words of analogous meaning are coupled together, they are understood to be used in their cognate sense, express the same relations, and give color and expression to each other. Therefore, although the word 'servant' is general, it must be limited by the more specific ones, 'laborer and apprentice' with which it is associated, and be held to comprehend only persons performing the same kind of service that is due from the others. It would violate this rule to hold that the intermediate, or second-class, represented a higher grade than the class first named."

Applying the rule declared in the last three cases to the phrase, " the wages of employees, operatives and laborers," it is not broad enough to prefer the sum due Mr. Comstock for salary and commissions. This, like many similar statutes in this and other countries, was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families, and it was not designed to give a preference to the salaries and compensation due to the officers and employees of corporations occupying superior positions of trust and profit. The construction contended for in this case would give a preference to all employees, without regard to rank, compensation, mode of employment, mode of payment or the length of time during which they had allowed their compensation

to remain in arrear. The assignees, transferrees and indorsees of all employees, no matter how remote or how great the accumulation, if it could be shown that the original consideration of the claim was " wages," " salary," " commissions " or " earnings " of persons employed would be preferred. In this way, as illustrated by this case, the wages and compensation due employees might become a large and constantly increasing debt, to be preferred, in case of failure, equally with the class of laborers who must, from necessity, rely upon the prompt payment of their earnings. This might defeat the beneficial object of the statute, by depriving the laborers of their hire for the benefit of those who had purchased, from time to time, their wages. This would work a wrong to the laborers and would endanger the claims of all the other creditors of the corporation.

The order should be modified by reversing that part of it holding that the claimants embraced within class 13 are entitled to a preference, but in all other respects, the order should be affirmed, with costs.

BOARDMAN, J., concurred.

MERWIN, J. (dissenting):

I differ from brother FOLLETT as to classes 14 and 15. In the case, class 15 is described as follows : " That the corporation was indebted to employees and laborers for wages accruing subsequent to the passage of the act before mentioned, for which wages the corporation had executed and delivered to such employees or laborers its promissory notes on time, which employees or laborers duly transferred said notes to third parties, who now hold the notes for value and which have not been paid."

The giving of the note did not operate as payment of the debt for wages. (*Jagger Iron Co.* v. *Walker*, 76 N. Y., 521.) The transfer of the note operated to transfer the debt (*The Oneida Bank* v. *The Ontario Bank*, 21 N. Y., 490), so that the debt for wages is still in existence and is owned by the claimant, and if the statute under consideration operates to prefer the debt as such, then the present holder is entitled to the benefit of the preference. The statute provides that where a receiver of certain corporations shall be appointed " the wages of the employees, operators and laborers thereof shall be preferred to every other debt or claim

against such corporation." By this form of expression it is the *wages* that is preferred; it is one kind of debt over *every other debt.* It is not one kind of debtor over every other debtor; it is not personal. The case of *Rollin* v. *Cross* (45 N. Y., 766) is not applicable. That case was under the mechanics' lien law (chap. 513 of 1851), which gave a personal privilege and required certain acts to be done by the person himself before his lien was perfected. The cases of *Pilcher* v. *Brayton* (17 Hun, 429); *Bolen* v. *Crosby* (49 N. Y., 183), and several other kindred cases, are more analogous, but they do not, I think, reach the present question. I find no authority exactly in point. The test, it seems to me, is, whether the debt or the person is preferred. I think it is the debt; that is the fair construction of the statute, and is consonant with the object of the statute, which is to benefit the laborer. It adds value to the claim, for anything that detracts from the assignability of a claim lessens its value. It is to be presumed that credit was given for the wages n reliance on this provision of law, so that the benefit of the law to a certain extent attached before the appointment of a receiver. It is on this principle that the debts incurred before the passage of the law are excluded from its benefits. The title of the act is not inconsistent with this construction, for it is to be presumed that the legislature preferred the debt as the best means to accomplish the payment of the wages. Besides the act itself, if reasonably certain, must control. This case is very different from the case where the assignee voluntarily surrenders the order of the laborer and takes a new obligation from the corporation directly to himself. It may be said then, with much force, that the debt for wages is extinguished and the preference gone.

Class 14 is illustrated as a case where the laborer, in payment for merchandise then sold and delivered to him by a merchant, draws and delivers to the merchant a written order on the corporation for a portion of the wages then due him and earned after the passage of the act, but "the merchant, the payee in the instrument, has never presented the same to the corporation, but has continued to hold, and now holds and owns, the same, the amount thereof appearing on the books of the corporation to the credit of the employee or laborer." The order, after specifying the amount, says, "and charge to my account."

If this order operated to assign to the merchant so much of the debt for wages, then the case is similar to class 15. So that the question is whether, under the circumstances, this order operated as an assignment. Dealing in orders in this way had prevailed for a number of years, and it may fairly be inferred from the case as presented that the corporation was accustomed to treat such orders as transfers *pro tanto.* (STORY, J., in *Mandeville* v. *Welch,* 5 Wheat., 286.) It was undoubtedly so designed by the drawer or laborer, and so understood by the merchant. In effect it was drawn on a particular fund; that was the effect of the transaction, though not put in so many words. (*Coates* v. *First Nat. Bank, etc.,* 91 N. Y., 20.) It was delivered to the merchant for full value. Concededly the corporation is indebted to some one for the amount, and it so appears on its books. By the statute, if my construction of it is correct, the debt is preferred, whether owned by the laborer or the merchant. As between these two, the latter is certainly entitled to it. In *Risley* v. *Phenix Bank* (83 N. Y., 318) it was held that there may be an oral assignment for a valid consideration of a portion of a debt. Under the Coates and Risley cases I think it should be held in the present case that there was an equitable assignment from the laborer to the merchant of so much of the debt for wages as was represented by the order, and that, therefore, the merchant is entitled to the preference. I am, therefore, of the opinion that classes 14 and 15 are entitled to be preferred.

The order, so far as it holds that class 13 is entitled to a preference under the statute, is reversed, but in all other respects the order is affirmed.