## WILLIAMSON *vs.* WADSWORTH.

A person employed by a manufacturing corporation as its *civil engineer and traveling agent*, at a fixed salary, is a *servant* of the corporation, within the meaning of the 18th section of the act of 1848, which makes the stockholders of such corporations personally and individually liable for debts due to their laborers, *servants* and apprentices.

The decision in *Richarsdon* v. *Abendroth*, (43 *Barb.* 162,) approved.

*Aiken* v. *Wasson*, (24 *N. Y. Rep.* 482,) distinguished from the present case.

THIS is an appeal from an order of Justice POTTER, made at special term, sustaining a demurrer to the plaintiff's complaint in this action.

The plaintiff brings this action to recover from the defendant, as a stockholder in the Pacific Coast Petroleum Company, of New York, (a corporation formed under the act of 1848,) the sum of $3791.61, being the amount of a certain judgment obtained by him against said company for services as a civil engineer and traveling agent. The plaintiff was employed by the corporation in the capacity of " civil engineer and traveling agent," at a salary of $6000 per annum.

The only question in the court below was, whether a civil engineer and traveling agent is a *servant* under section 18 of the act of 1848, which makes the stockholders of such corporations personally and individually liable for debts due to their laborers, servants and apprentices. (*Laws of* 1848, *ch.* 40, *p.* 58.)

*Samuel A. Noyes,* for the appellant. I. The statute under which the plaintiff claims that the defendant is liable, is a statute extending common law privileges, and limiting common law obligations. At common law all of the corporators would have been liable as partners. (*Bailey* v. *Bancker*, 3 *Hill*, 188. *Allen* v. *Sewall*, 2 *Wend.* 327.) In granting companies, organized under the act, general exemptions, by virtue of their corporate character, and limiting their liability to specific obligations, the legislature made the statute a

Williamson *v.* Wadsworth.

remedial statute as to all persons embraced within the clause to which a fair construction can make those specific obligations to apply. Remedial statutes should be liberally construed. (*Smith on Com. and Stat. Law,* § 347.) This is an action against a corporator and stockholder who is not only seeking to escape from his common law obligation, but from that imposed by the statute itself, by claiming that the term *servant* shall be construed in a limited and restricted sense, instead of a general sense. The well defined rule is in direct opposition to any such construction. The ordinary meaning of the words of the statute being adopted, the defendant is liable. If there is any ambiguity (which we deny) in the statute, it should be taken most strongly against the defendant. (*Smith on Stat. and Com. Law,* 650. *Stourbridge Canal Co.* v. *Wheeley,* 2 *B. & Ad.* 793.)

II. What is meant by the term *servant?* Webster gives the definition. He says, in a legal sense, stewards, factors, bailiffs *and other agents,* are servants for the time they are employed in such character. Kent, (2 *Com.* 258, 260,) defines a servant to be " one who serves another under a contract of hire ; one who serves, or undertakes to serve, another for a stipulated consideration." Webster, again, in defining service, says : " In a general sense, the labor of body and mind performed at the command of a superior, or in pursuance of a duty, or for the benefit of another." The general meaning of the term thus clearly and unmistakably includes and covers the case of the plaintiff.

III. The plaintiff is a servant, within the meaning of the statute under consideration. (2 *R. S. 5th ed. p.* 662, § 41. *Richardson* v. *Abendroth,* 43 *Barb.* 162. *Conant* v. *Van Schaick,* 24 *Barb.* 87, 99.) There is not a single word in the statute from which it can be inferred that the term *servant* was used by the law makers in a restricted sense. The context shows it was not so used. The largest class to be provided for—that class least likely to be able to take care of themselves, and the most likely to be generally employed—

is placed first in the list, under the term "laborers." This term is not used in a restricted, but in its enlarged legal sense. Next comes the term *servants*. The first word being used in a general sense, and this term (servants) being followed by the word apprentices, which is also used in a general sense, and under its full legal meaning, it is absolutely apparent that the term *servants* must have been used in its general sense.

IV. *Finally*. What was the object of the legislature in adopting the 18th section of the act on which this suit is based? It was to introduce a fundamental rule in all cases under the act, where persons are united in a corporate capacity, and when they were to be shielded from general legal responsibility, by virtue of such capacity, in pursuit of hazardous profits, that all the persons they made use of to make money, or to experiment with, in hope of making money, were to be paid for the service they performed, by the stockholders individually, if the corporate assets were insufficient for that purpose.

The plaintiff is within the words, the reason, and the law, of the provision; and the order sustaining the defendant's demurrer should be reversed, and judgment rendered for the plaintiff, overruling the demurrer, with costs.

*H. & C. S. Andrews*, for the respondent. I. The plaintiff was not a "laborer" or "servant" of the company, in the *ordinary*, *natural* import of those words. It is only by giving a broad interpretation, and so, by straining the language of the statute, that the plaintiff can be termed a laborer or servant in his said employ.

II. The case of *Richardson* v. *Abendroth*, (43 *Barb*. 162,) cannot be regarded as a controlling authority in this case. 1. That decision, in holding that the secretary of a corporation is a *servant* of the company, extends the operation of the statute beyond the plain, obvious and usual meaning of the words. 2. It also extends the operation of the statute

beyond the apparent reason of the enactment, which undoubtedly was the protection of the workmen, laborers and others occupying similar positions, who might naturally be regarded. as least able to protect themselves. 3. No reasons are given, nor authorities cited, to sustain the decision in that case. 4. That decision obviously fails to meet the approval of his honor Justice Allen. (*See page* 164.) 5. It does not appear that the decision of the Court of Appeals, in the case of *Aikin* v. *Wasson*, (cited below,) was brought to the attention of the court on the argument in *Richardson* v. *Abendroth*, and it is difficult to believe that the construction given to the statute by the general term would have been adopted if that decision in the Court of Appeals had been before them.

III. The reasoning and the ruling of the Court of Appeals, in *Aikin* v. *Wasson*, (24 *N. Y. Rep.* 482,) are, as was remarked by his honor Justice POTTER, in giving his decision at the special term, " *decisive of this case.*" That was an action to enforce an alleged personal liability of the defendant as a stockholder in a railroad company, under the provisions of section 10 of the general railroad act of 1855, making stockholders liable for debts due to "laborers and servants," for services performed for the corporation. Selden, Ch. J. observed : " It is obvious from the nature and terms of this and other provisions of the act, as well as from a general policy indicated by analogous statutes, that the legislature intended to throw a special protection around that class of persons who should actually perform the manual labor of the company. To accomplish this design, it is not necessary that the words "laborers and servants" should receive their broadest interpretation. Indeed, such a construction would scarcely harmonize with the general scope and object of this and similar acts. In some very extended sense, the directors and other principal officers of the corporation may be considered as its agents and servants, and yet no one, I apprehend, would contend that the provision was intended for their

benefit. The word "servants" is qualified, and to some extent limited in its meaning, by its association with the word "laborers," according to the familiar maxim, *noscitur a sociis.* It clearly would not include every one who should perform any service in any form for the company. Such a construction is repelled, not only by the apparent reason for the enactment, but by the language used, which would naturally have been far more general if such had been its object." All the judges concurred in this decision.

*By the Court,* CLERKE, J. The decision in *Aikin* v. *Wasson,* (24 *N. Y. Rep.* 482,) does not control the question now before us. The case is not analogous. The plaintiff, there, was a contractor for the construction of a portion of the road of the Albany Northern Railroad Company, of which the defendant therein was a stockholder. He was no more a servant of the company than any manufacturer who contracted to furnish them with rolling stock—with locomotives or passenger cars. None are servants in a legal sense, but those who act in subordination to others, under whose order, direction and control they are acting for the time being. The employer can, in such case, direct and control every act of the *employee* connected with the particular service in which he is engaged. The one commands ; the other obeys ; the one is proprietor and superior ; the other is merely a helper. In short the relation is that so long and well known to the law—the relation of master and servant. It requires a state of subordination, essentially different from that known in any other capacity, in which one contracts to do something for another. A person who has contracted to construct a railroad is in no such state of subordination. For a certain specified sum of money, he undertakes to construct the road within a specified time. He is not subject, in the performance of the work, to the immediate direction and control of the other party. A secretary, on the other hand, who is employed by the week, month or year, is under the continual supervision

and direction of his employers, whom he is bound in the minutest particular relating to his employment to obey; and therefore, I think the case of *Richardson* v. *Abendroth,* (43 *Barb.* 162,) was correctly decided. The capacity in which the plaintiff in the case before us, was employed by the Pacific Coast Petroleum Company, was, in this respect, analogous to that of the secretary. He was employed as a civil engineer and traveling agent, at a fixed salary. He was, in every act relating to this employment, in subjection to the company, bound, as to the time and manner of performing his duties, to follow their directions, and implicitly obey their commands. He was, in this capacity, their subordinate helper.

He was, therefore, in my opinion, a servant, under section 18 of the act of 1848.

The order should be reversed, and the demurrer overruled, with liberty to the defendant to answer within twenty days, costs to abide the event.

[NEW YORK GENERAL TERM, June 3, 1867. *Leonard, Clerke* and *Welles,* Justices.]