HARRY C. HILL, Respondent, *v.* HARVEY SPENCER, Appellant.

One employed by a mining corporation, organized under the general manufacturing act of this State (chap. 40, Laws of 1848), as agent, to take charge of its mines in another country, with full power to control its property and manage its financial affairs in that country, in all respects as the company itself could do, is not a servant within the meaning of the provision of said act (§ 18), making the stockholders of any company organized under it liable for services performed for the corporation by its laborers, servants, etc., and an action cannot be maintained by him against a stockholder to recover for his services in such employment.

*Hill* v. *Spencer* (2 J. & S., 304) reversed.

(Argued May 28, 1874; decided September term, 1874.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, in favor of the plaintiff, entered upon an order denying a motion for a new trial, and directing judgment on a verdict. (Reported below, 2 J. & S., 304.)

This action was brought by the plaintiff against the defendant as a stockholder in " The American and Mexican Silver Mining Company," a corporation organized under the general manufacturing act (chapter 40, Laws of 1848), for the recovery of a balance due to him for services rendered to that company and for which judgment had been recovered against it, after the return of an execution issued thereon wholly unsatisfied.

The plaintiff's claim was based on two grounds:

1. That the services for which the judgment was recovered were rendered by him as a " servant " of the company within the meaning of the eighteenth section of that act.

2. That the capital stock of the company had never been fully paid in, as required by law.

After proof had been given on behalf of the plaintiff, for the purpose of establishing both of those grounds, the sub-

stance of which is set forth in the opinion, and he had rested his case, the defendant's counsel moved to dismiss the complaint, on the ground that no case was made out against the defendant. The court held "that the evidence had not established that the capital stock of said corporation had not been fully paid in, but that the plaintiff was a '*servant*' within the meaning of the act, and, on the latter ground, denied the motion." To the latter ruling there was an exception taken.

At the close of the testimony the court directed the verdict for the plaintiff, to which defendant's counsel excepted. A verdict was rendered accordingly. Exceptions were ordered to be heard at first instance at General Term.

*Waldo Hutchins* for the appellant. Plaintiff was not a servant of the corporation, within the meaning of the act of 1848 (chap. 40). (2 R. S. [5th ed.], 729, 788, 823; Laws 1850, 214, § 10; Laws 1854, chap. 288, § 16; *Aiken* v. *Wasson*, 24 N. Y., 482; *Conant* v. *Van Schaick*, 24 Barb., 87; *Richardson* v. *Abendroth*, 43 id., 162; *Williamson* v. *Wadsworth*, 49 id., 294; *Balch* v. *N. Y. and O. M. R. R. Co.*, 46 N. Y., 521.)

*Duncan Smith* for the respondent. Plaintiff was a servant of the corporation. (2 R. S. [5th ed.], 662, § 41; 1 Pars. Con. [3d ed.], 86; *Woodward* v. *Washburn*, 3 Den., 369; *Hovey* v. *Ten Broeck*, 3 Robt., 316; *Vincent* v. *Bamford*, 1 J. & S., 506; *Conant* v. *Van Schaick*, 24 Barb., 87; *Williamson* v. *Wadsworth*, 49 id., 294; *Coffin* v. *Reynolds*, 37 N. Y., 640; *Warner* v. *H. R. R. R. Co.*, 5 How. Pr., 454, 456.)

LOTT, Ch. C. The defendant was a stockholder in the corporation known as "The American and Mexican Silver Mining Company," organized under the act of the legislature of this State passed February 17th, 1848 (chap. 40), entitled "An act to authorize the formation of corporations

for manufacturing, mining, mechanical or chemical purposes," and the acts amendatory thereof, when the services for which the judgment recovered against him in this action were rendered. The eighteenth section of that act provides that the stockholders of any company formed under its provisions "shall be jointly, severally and individually liable for all debts that may be due and owing to all their laborers, servants and apprentices, for services performed for such corporation;" and the recovery against the defendant was had on the sole ground that the plaintiff was "*a servant*" of the company within the meaning of that section. The only question which it is necessary to examine is whether he was such a servant. This examination will involve a reference to the material evidence bearing on the subject. It thereby appears that the plaintiff's first employment was under an agreement with the company, in writing, dated May 30, 1863, entered into at their office in the city of New York, appointing him "commercial agent for the management of their commercial and financial affairs in California and Mexico," and declaring that his acts "in the performance of his legitimate duties as commercial and financial agent" would be recognized and binding on the company. Under that appointment he went to California, and thence to Mexico, and while in one of those places he received another appointment, also in writing, through the mail, bearing date the 11th day of January, 1864, by which the company ordained, constituted and appointed him "their true and lawful attorney for them, and in their name to take possession of their mines and mining property, together with all and every thing, and property belonging to them in Mexico, and to manage and conduct their business and affairs in that country, the same, in all respects, as the said company could do if located at the place," and they did thereby "ratify and confirm" what he should "lawfully do in the premises." He testified that the last appointment was received by him about sixty days after its date; that under it he "took charge of the mines and property of the company in Mexico, and of its

affairs in Mexico;" that in the summer of 1864, while he was in Mexico, he made a verbal agreement with Mr. William Hickok, the treasurer of the company, who was then at the mines, that he should remain there, and receive $5,000 a year for his services, and that he subsequently, after the return of Mr. Hickok to New York, received a resolution of the board of directors, through the mail, ratifying that agreement. That resolution bears date August 31, 1864, and is in the following terms, viz.: " Office of the American and Mexican Silver Mining Company, New York, August 31, 1864. At a meeting of the board of directors of the American and Mexican Silver Mining Company held this day, Mr. Hickok reported that he had arranged with Harry C. Hill to continue in the company's employ, at the mines in Mexico, for one year from June 1, 1864, at a salary of $5,000, and on motion it was voted to ratify and approve said arrangement, and Mr. Hickok was authorized to notify Mr. Hill of the same." The services rendered by the plaintiff were performed under said agreement and appointment. He said that he performed all the duties under them that were required of him; that he " exercised a general supervision of the property there, and of all their affairs, employment and management of the men, purchase of supplies, and all the duties of a general superintendent;" that, " for a time, he kept the accounts of the company," until Mr. Hickok came there; that he and a Mr. Welland "attended to the payment of the hands employed at the mines;" that "there were from a dozen to seventy-five men employed at different times, in mining, making roads, getting out timber, building houses, etc.;" that he " was obliged to travel for the company, to receive, forward and purchase machinery, supplies, etc., and also to perfect the title of the company to the mines;" that the mining settlement owned by the company was called Setentrion, and was situated in the canton of Matamoras, in the State of Chihuahua, in Mexico; there were three mines; that he resided a mile from one mine, three miles from another, and about four miles from another. He further

testified that there was no change in his duties from the time he received the authority or appointment of 11th January, 1864, until he left the mines, on 23d of May, 1866, for New York, where he arrived in June, 1866; that he left the mines in consequence of the failure of the company to remit funds to him; that no objection was made to his course in that respect, and that the president, treasurer and secretary of the company, in an interview with him, at the office of the president, after his return, and some of the directors who were present, promised to pay him his salary. There were also some letters from the president and the treasurer of the company to the plaintiff introduced in evidence, relating principally to the raising of funds in New York for its use, to be remitted to him. Some of these were written subsequent to the 1st day of June, 1865, being the expiration of the term of the plaintiff's employment, specified in the resolution of August 31, 1864, above set forth.

The evidence above detailed or referred to was given on the direct examination of the plaintiff. On being cross-examined, he further said that there was not any other written express authority for him to act for the company than the said agreement of 30th May, 1863, the appointment of January 11, 1864, and the resolution of August 31, 1864, herein above particularly referred to. No other evidence bearing on the employment of the plaintiff, or the nature and character of his services was given.

The services for which the recovery was had, had been rendered from the 1st of June, 1865 to the said 23d day of May, 1866; and, from what is shown by the evidence, they were not, in our opinion, performed for the company by the plaintiff as its " *servant*," within the meaning of the section under which his claim was made and sustained. That term is one in general use. In common parlance, it is understood to relate and apply only to a person rendering service of a subordinate, but not necessarily of a menial, character to an employer, varying in its nature, according to the business or occupation in which it is rendered, and not to extend to

and include every employe or party who does work for another. The context in which it is used, in the section referred to, being associated with "laborers" and "apprentices," indicates that it was intended to apply to a person employed to devote his time, and render his service in the performance of work, similar in its general character to that done by those employes. The provisions of the section are not restricted to mining corporations only, but are applicable also to corporations formed for manufacturing, mechanical and chemical purposes; and it may be assumed that the nature and kind of services rendered to them differ; some being such as are performed by laborers engaged in a toilsome occupation, or doing hard work, as manual, bodily and physical labor in mines, and requiring little skill, while a different kind of a service is rendered by a person pursuing or employed in manufacturing or mechanical pursuits requiring intelligence and greater skill, some of whom may properly be called servants; and the term apprentice is ordinarily meant to designate a person bound to work for a party engaged in such or similar pursuits, with a view of learning and becoming acquainted with the business thereof. · It is, therefore, properly said by the respondent's counsel, in his points, that the word "servants" in this section must be taken to have been used not in its broadest, most comprehensive, nor in its most limited and restricted sense, but according to the general and ordinary use of the term : And it may be conceded, as he says, that to use it in its most comprehensive sense would include the president and other officers of a corporation; while its use in a limited and restricted sense would only indicate a domestic, a person employed in the house or family, or a menial who labors in some low employment; and that the term was not intended to extend to the former, nor to be limited or restricted to the latter class; and it may also be conceded, as stated by him, that, "unless it be when domestic or menial servants are referred to, there is no sense or use in which the word "servant," by its own force, indicates a mere bodily or manual service:" but that circum-

stance fails to show or establish that the plaintiff's services were those of a *servant*, " according to the general and ordinary use of the term," in which sense the counsel concedes it " must be taken to have been used." The plaintiff's first and original employment, as the case shows, was designated by the company " to be that of commercial agent for the management of their commercial and financial affairs in California and Mexico." That cannot well or properly be claimed to be a trust to be executed, or a service to be performed by a servant, in the general and ordinary and usual acceptation of that term. The subsequent authority conferred on him by the power of attorney of the 11th of January, 1864, did not interfere with or limit his powers, or affect his duties as such " commercial agent," but extended his powers, so as to take possession of the mines and mining property, together with all other property, and every thing belonging to the company ; and also " to manage and conduct their business and affairs in that country, the same, in all respects, as the said company could do if located at the place." By this appointment he was not, by name or special designation, made or constituted the president, or secretary, or treasurer, or any other officer of the company ; but he was substantially vested with the powers of all of them combined, and he became the representative of the corporation in every respect, as to its business and affairs in Mexico. The third and last agreement between the company and plaintiff related to the continuance of his services at the mines, at the fixed compensation of $5,000 therefor, for a year from June 1st, 1864. The compensation is spoken of and referred to in the resolution of August 31, 1864, approving of the arrangement made by the treasurer with the plaintiff while in Mexico for the payment of such compensation, as " a salary " — a term not ordinarily applied to services performed by a " *servant*" in the general and usual understanding and meaning of the relation of an employe to an employer. The services rendered by the plaintiff were all performed under and in pursuance of the powers conferred on him under the said original agreement, and said power of attorney, but more par-

ticularly the latter.   He says that he " exercised a general supervision of the property " of the company in Mexico, " and of all their affairs, employment, management of the men, purchase of supplies, and all the duties of a general superintendent," and he refers, among other matters, to the keeping of the accounts of the company for a time, the payment of the hands employed at the mines, the purchase of machinery, supplies, etc., and perfecting the title to the mines.   Such services do not fall within those done by a servant, as that term is ordinarily understood.   The nature and extent of the plaintiff's employments and the services so rendered by him justify the claim or position of the defendant's counsel, as clearly and tersely expressed in his first point (and which I adopt, as expressive of my conclusions), as follows : " The duties of the plaintiff, under the written authority given him, were those of an agent, to whom the company had deputized its entire powers, in respect to the management of its business in Mexico, so that he could manage and conduct their business and affairs in that country the same, in all respects, *as the said company could do*, if located at the place.   He was to take possession of their entire property, and was to manage their commercial and financial affairs, both in California and Mexico.   The mines were in Mexico — not in California — but the range of his employment embraced financial and commercial operations in the latter State.   In respect to the mines themselves, and all that pertained to them and the business connected with them, it cannot be disputed that he was the sole administrator, endowed with absolute discretion, yea, with all the discretion which the company itself could possess, if it had itself been located at that place.   In a word, that until his powers were revoked or modified he was, for every purpose of management, control and operation of the mines and property in Mexico, *the company itself*.   The officers of the company, in their correspondence with him, treat him on a footing of equality, as one on whose management their success greatly depended, and to whom they intrusted their secret affairs and plans, and troubles and policy," and, as the counsel further says," the men employed

were employed *under* him, and there is not a particle of evidence to show that he ever, in a single instance, worked with them, or performed the least manual labor." The question is then very pertinently asked by him : " Is such an agent ' *a servant* '— a servant within the meaning of the act ? " And, in my opinion, it admits of none other than a decided and full negative answer, without any limitation or qualification, that he is not. It is not necessary, and I will not undertake to state what is necessary to define who is such servant. The term, as used. in the act, is not susceptible of a certain prescribed and infallible definition in each and every case where services are rendered to a corporation formed and organized under it. The nature and character of those services must determine the relation which the person rendering them bears to such corporation. It is sufficient for the decision of this case to say that the facts and circumstances disclosed clearly show that the plaintiff is not such servant. This conclusion is in harmony with, and sustained by, the reasons given by the judges in the opinion given for the decision. of the Court of Appeals in *Aikin* v. *Wasson* (24 N. Y., 482), and in *Coffin* v. *Reynolds* (37 id., 640). In the first of those cases it was held that a contractor for the construction of a part of a railroad is not a laborer or a servant within the provision of the tenth section of the general railroad act of 1850, making stockholders in a railroad corporation formed under it liable for debts due or owing to any of its laborers and servants for services performed for such corporation. In the last, which arose under the same section of the act, by virtue of which the claim under consideration is made, it was held that a secretary of an iron company was not a laborer, servant or apprentice, within the meaning of either of those terms as used in that section. The decision there involved in reality the principle that the present plaintiff, under his several employments by the company, and standing in the relation which he occupied to it, and which has above been particularly referred to, was not a servant within the meaning of that section, and the reasoning of both the judges, in the opinions published, clearly

sustains our conclusion to that effect; but, as before stated, I do not deem it necessary or intend to enunciate any *particular* definition of the term "servant," as used in the act, which shall be controlling in every case of services rendered to every corporation formed under it. The views above expressed render a particular reference to the different deci sions by the Supreme Court and the Superior Court, cited in the points of the counsel of the respective parties, unneces sary. They have been carefully examined, and it is sufficient to say, generally, that in some of the cases the facts were essentially different, and that the decisions in the others of them, so far as they are inconsistent with those made by the Court of Appeals, above cited, must be deemed overruled thereby, and by our conclusion and decision herein. It follows from the considerations above presented that, upon the whole case, the denial of the motion for the dismissal of the com plaint, and the direction of the court given to the jury to find a verdict for the plaintiff, were both erroneous.

The judgment appealed from must consequently be reversed and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.