THE PEOPLE *v.* E. REMINGTON AND SONS, Respondents.

In the Matter of THOMAS RINGWOOD *et al.*, Appellants.

*Supreme Court, Fourth Department, General Term, July 20, 1889.*

*Insolvent corporations. References.*—Where persons enter into an arrangement with a corporation, whereby it furnishes them room, power, machinery and stock, and they furnish the labor employed in the manufacture of parts of machinery and implements, and hire and pay the laborers who do most of the work, subject to general rules in force in its factory, they are not employees, operatives or laborers of such corporation, and the amounts due them are not wages, within the meaning of chap. 376, laws of 1885, giving a preference, in certain cases of insolvency, to such wages.

See note at end of case.

*A. M. Mills,* for petitioners.

*Thomas Richardson,* for receiver.

*John W. Hogan,* for attorney-general.

MARTIN, J.—The petitioners, by this proceeding, sought to obtain a determination of the court that their several claims against the defendant were preferred, and procure an order that they should be paid in full by the receivers of the defendant. This application was based on the claim that the petitioners were employees, operatives and laborers

of the defendant, and that the several sums due them was for wages within the intent and meaning of chapter 376 of the Laws of 1885, an act to provide for the payment of wages to employees, operatives and laborers of domestic corporations, other than insurance or monied corporations, of which a receiver should be appointed.

The special term held that the petitioners were not such employees, operatives or laborers, and that the sums due them were not for wages within the meaning of such statute, and, therefore, that they were not entitled to the relief sought. The correctness of this decision is challenged by the petitioners, and presents the only question involved on this appeal.

The evidence taken in this proceeding shows that the petitioners had entered into an arrangement with the defendant, whereby it furnished them room, power, machinery and stock, and they furnished the labor employed in the manufacture of parts of machines and implements manufactured by the defendant; that in each case the petitioner employed others to assist him in the performance of such labor, and, in most cases, the petitioner personally performed but a small portion of the labor for which his claim is made; that the men thus employed were hired, discharged and paid by the petitioners, the rate of the wages or the price per piece that they were to be paid, the time of their service, the particular kind of labor at which they were to be employed, were all determined by and between each petitioner and his employees; that the petitioners, or the men in their employ, furnished emery, files, tools and oil used by them; that the defendant was to pay the petitioners a fixed price for the parts of the machines or implements so made, the amount of which was credited to the petitioners on the defendant's books each month; that such credits included the whole work performed, as well that performed by the men thus employed as that performed by the petitioners themselves; that the petitioners received as a compensation or

profit the difference between the sum paid by the defendant and that paid their men ; that in some cases the petitioners paid their men by the day or hour, and in others by the piece ; that sometimes the petitioners and sometimes their men worked for the defendant at irregular or. unusual work by the day, and were given credit for such work with the credit given them for the work done by the piece ; that the defendant established certain general rules for the government of all'persons engaged at work in its shop, whether in the employ of the defendant or in the employ of jobbers or contractors ; and that the business of the defendant was managed by its officers and agents.

Under these facts we do not deem it necessary to examine the questions that were so fully and ably discussed by counsel on the argument, as the question involved cannot, we think, be regarded as an open question in this court.

In the case of The People *v.* Remington (45 Hun, 329, 339 ; 10 N. Y. State Rep. 310), a similar question was involved. One of the claims presented in that case was the claim of John V. Schmidt, who entered into an agreement with the defendant by which the defendant agreed to furnish room, power, machines and stock to Schmidt, who agreed to furnish the labor in manufacturing parts of machines and implements manufactured by such corporation. He employed, paid and discharged the men engaged on this work, and furnished emery, files, oil and tools used by the men in doing the work, the corporation agreeing to pay him a fixed price for the parts of the machines and implements made. There was due him on account of such agreement upwards of $500 which had accrued since the passage of the act of 1885, and remained unpaid. In that case, this court held, that Schmidt was not entitled to the preference provided for by the statute.

. We are unable to discover any such essential difference between the facts in the Schmidt case and the facts disclosed by the evidence in this as would justify us in holding that

the petitioners were entitled to the relief sought.   We are of the opinion that the principle of the decision in Schmidt's case is controlling in this, and that the order appealed from should be affirmed.

Order affirmed, with costs.

All concur.

---

NOTE ON "SERVANTS, ETC., AS USED IN CORPORATION ACTS."

*Acts of* 1848.—In Dean *v.* DeWolf, 16 Hun, 186, a corporation, created under the act of 1848, was located in the city of New York.   One Dow was its agent, whose duties were to superintend the affairs of the company in certain localities, with power to act in all matters.   By him the plaintiff was appointed an assistant and, in his absence, exercised the same powers. He received a salary of $700 a month.   It was held that the plaintiff was not laborer or servant within the meaning of § 18, chap. 40 of 1848.

The fact that he occasionally performed manual labor in the discharge of his duties, did not make him a laborer within the meaning of that statute.   The nature of his employment, his duties under it and the largeness of his compensation, render the classification of him under the designation of "servant" or "laborer" inappropriate, and contrary to the intention of the legislature.   Id.

No definition of the terms "servant" and "laborer," which will be applicable to every case, arising under the different statutes pertaining to this subject, has been heretofore attempted or given.   In construing statutes, words are to be taken in their natural and obvious sense, and not in a sense unnecessarily restricted or enlarged.   Common sense rejects an interpretation which places the operatives in a factory, or the laborers in a mine, and the persons whose duties relate to the conduct and superintendence of their work, under the same designation.   Id.   In one sense, they are all servants or laborers, because they render services or perform labor.   But such a construction will include the officers of a company, its attorney, and all other persons who shall perform any sort of service for it.   But this construction has been uniformly rejected.   Id.   A proper answer to the question, who are laborers and servants, is, that they are persons who, in common parlance and according to the general understanding of men, fall under that appellation, in enumerating the different classes of persons employed by a corporation.   Id.

In Conant *v.* Van Schaick, 24 Barb. 87, it was held that an officer was a servant if he had no distinctive appellation; and in Richardson *v.* Abendroth, 43 Barb. 163, it was held that a secretary was a servant within the meaning of the statute.   But this may be regarded as overruled by Coffin *v.* Reynolds, 37 N. Y. 640.

Note on " Servants, etc., as Used in Corporation Acts."

A statute liability created against stockholders is always strictly construed. The courts have held that it was the policy of the legislature to protect those only who are the least able to protect themselves, and who earn their living by manual labor for a small compensation and not by professional services. See Gurney *v.* Atlantic & G. W. Ry. Co., 58 N. Y. 358.

In common parlance, the term "servant," within the meaning of § 18, chap. 40 of 1848, is understood to relate and apply only to a person rendering service as a subordinate, but not necessarily of a menial, character to an employer, varying in its nature, according to the business or occupation in which it is rendered, and not to extend to and include every employee or party who does work for another. The context, in which it is used in § 18, being associated with "laborers" and "apprentices," indicates that it was intended to apply to a person employed to devote his time, and render his service in the performance of work, similar in its general character to that done by those employees. The provisions of the section are not restricted to mining corporations only, but are applicable also to corporations formed for manufacturing, mechanical and chemical purposes. Hill *v.* Spencer, 61 N. Y. 274. It may be assumed that the nature and kind of services rendered to them differ. Some are such as are performed by laborers engaged in the toilsome occupation, or doing hard work, as manual, bodily and physical labor in mines, and requiring little skill, while a different kind of service is rendered by a person employed in manufacturing or mechanical pursuits, requiring intelligence and greater skill. The term "apprentice" is ordinarily meant to designate a person bound to work for a party engaged in such or similar pursuits, with a view of learning and becoming acquainted with the business thereof. Id. The word "servant" in this section must be taken to have been used, not in its broadest or most comprehensive, nor in its most limited, sense, but according to the general and ordinary use of the term. Id. To use it in its most comprehensive sense would include the president and other officers of the corporation. Its use in a limited and restricted sense would only indicate a domestic, a person employed in the house or family, or a menial who labors in some low employment. The term was not intended to extend to the former, nor to be limited or restricted to the latter class. Id.

The term "salary" is not ordinarily, applied to services performed by a "servant" in the general and usual understanding and meaning of the relation of an employee to an employer. Id.

One employed by a mining corporation, organized under chap. 40 of 1848, as agent, to take charge of its mines in another country, with full power to control its property and manage its financial affairs in that country, in all respects as the company itself could do, is not a servant within the meaning of the provision of § 18 of said act. Id. Such services do not fall within those done by a servant, as that term is ordinarily understood. Id. This term as used in this act, is not susceptible of a certain prescribed and infallible definition in each and every case, where services are rendered to a corporation formed and organized under it. The nature and character

of those services must determine the relation which the person rendering them bears to such corporation. Id.

§ 18 of chap. 40 of 1848 creates a privileged class, into which none but the humblest employees are admitted. A distinction is clearly made between president, director, officer, agent, and laborer by the statute. The stockholder must pay, not debts due to all employees of the company, but those due to "laborers, servants and apprentices," and not all debts due to them, but only such as are due for "services" performed for such corporation. Wakefield *v.* Fargo, 90 N. Y. 213. The services referred to are menial or manual services. He who performs them must be of a class whose members usually look to the reward of a day's labor or service, for immediate or present support, from whom the company does not expect credit, and to whom its future ability to pay is of no consequence. It is one who is responsible for no independent action, but who does a day's work, or a stated job, under the direction of a superior. Id.; Dean *v.* De-Wolf, *ante ;* aff'd 82 N. Y. 626.

Individuals who occupy positions and are usually of such capacity as enables them to look out for themselves, are not within the privilege of the statute. Wakefield *v.* Fargo, *ante.* To the language of the act, must be applied the rule common in the construction of statutes, that, when two or more words of analogous meaning are coupled together, they are understood to be used in their cognate sense, express the same relations, and give color and expression to each other. Id. Though the word "servant" is general, it must be limited by the more specific ones, "laborer and apprentice," with which it is associated, and be held to comprehend only persons performing the same kind of service that is due from the others. It will violate this rule to hold that the intermediate, or second, class, represent a higher grade than the first-named class. Id.

A general manager is not *ejusdem generis* with an apprentice or laborer. Though in one sense he may render most valuable services to the corporation, he will not in popular language be deemed a servant. Id. The word used is no doubt broad enough, and might, without exaggeration, represent all persons connected with the administration or furtherance of the affairs of the corporation. "Laborer or apprentice" are words of limited meaning, and refer to a particular class of persons employed for a defined and low grade of service, performed without responsibility for the acts of others and under the supervision of another. Id. They necessarily exclude persons of higher dignity, and require that one who seeks his pay as a servant, should be of no higher grade than those enumerated as laborers or of lesser quality. A statute, which treats of persons of an inferior rank, cannot, by any general word, be so extended as to embrace a superior. The class first mentioned is to be taken as the most comprehensive. Id. The word "servant" must be construed by its associates. It stands between, "laborer" and "apprentice," and can represent no higher degree of employment. Id.

One employed at a yearly salary as a bookkeeper and general manager is not a laborer, servant or apprentice within the meaning of this section.

Note on "Servants, etc., as Used in Corporation Acts."

In Hovey *v.* Ten Broeck, 3 Robt. 316, a conclusion was reached that "a man of all work," who had a complete supervision of the property, men and business of the company, kept their books and was to receive for his services compensation at the rate of $500 per annum, was, as to some matters, a laborer, and, as to others, a servant, upon the ground that as "laborer" he performed manual labor, and at other times, as "servant," rose above it.

The scope and purpose of chap. 40 of 1848 was to protect the classes most appropriately described by the words used, viz.: those engaged in manual labor, as distinguished from officers of the corporation or professional men engaged in its service. Coffin *v.* Reynolds, *ante.* It was intended to furnish additional relief to a class who usually labor for small compensation, to whom the moderate pittance of their wages is an object of interest and necessity, and who are poorly qualified to take care of their own concerns, or look sharply after their employers. Id. In Richardson *v.* Abendroth, *ante*, it was held that the secretary of a manufacturing company, under the law of 1848, is a servant within § 18 of that act. No opinion is given in the report of that case ; but an allusion is made to one which seems to have been rendered on some former occasion.

The result reached by the decisions in the cases of Conant *v.* Van Schaick, *ante ;* Ericsson *v.* Brown. 38 Id. 390 ; Aiken *v.* Wasson, 24 N. Y. 482 ; Williamson *v.* Wadsworth, 49 Barb. 294 ; Coffin *v.* Reynolds, *ante*, is that the claimant, to hold a stockholder of a corporation organized under the act of 1848, liable for his services, must come strictly within the denomination of a "laborer, servant or operative" of the corporation ; that neither a contractor, who undertakes to build a railroad for a corporation, nor an officer thereof, is such laborer or servant ; and that a consulting engineer, who renders services as such, is not a laborer or operative ; but whether he comes, or does not come, within the denomination of servant, was not decided: But, on the other hand, it is decided that an engineer, a civil engineer and travelling agent, are within the terms, laborer and servant. It is reasonable to conclude from these cases that the business of the corporation, and the character of services required for its transaction, have some influence in determining whether a given service is within the terms of § 18 of the act. Harris *v.* Norvell, 1 Abb. N. C. 127.

The test cannot unalterably be that the services intended to be protected should proceed from manual effort exclusively, not that the persons to be shielded, must of necessity be, by occasion of ignorance, incapable of guarding themselves, through contracts made in advance. Id. This section of the act is not subject to such limitations. Id. A company, organized and operating a railroad, must needs have laborers and servants performing work different in character from that rendered by persons in the same relation, for a corporation engaged in publishing a newspaper. In Harris *v.* Norvell, *ante*, it was held that a reporter, employed by a newspaper company, is a laborer or a servant of the company within § 18 of this act.

So, it was held that the city, or assistant city editor, of the newspaper association, if not an officer of the corporation, is a laborer and servant thereof within the meaning of this statute.

In Short *v.* Medberry, 29 Hun, 39, plaintiff's assignor applied to the Rochester Frear Stone Company, a corporation organized under chap. 40 of 1848, for a situation. He was told that one would be given to him, if he would procure a loan of $3,000 for the company. He procured the loan and began to work for the corporation at a salary of $1000 a year, payable monthly, or as he wanted his pay. He acted as foreman, took part in the manual labor required to manufacture the stone, kept the time of the men, solicited orders, collected bills and did whatever was required of him by the general superintendent of the company. And it was held that he was a laborer or servant within the meaning of § 18 of this act. He rendered manual service of the same kind as that performed by the other laborers in the employ of the company, as one of his principal duties, and not as a mere incident to his position. Id. Conant *v.* Van Schaick, *ante;* Williamson *v.* Wadsworth, *ante;* Hovey *v.* Ten Broeck, *ante;* Vincent *v.* Bamford, 42 How. 109.

In Aiken *v.* Wasson, *ante,* and Balch *v.* N. Y. & O. M. R. R. Co., 46 N. Y. 521, the claim was for work done by a contractor. Hill *v.* Spencer, *ante,* and Krauser *v.* Ruckel, 17 Hun, 463, were cases of a general superintendent or managing agent having control of mines at a distance from the office of the company. Dean *v.* DeWolf, *ante,* was a case of an assistant superintendent with like powers, and in Coffin *v.* Reynolds, *ante,* the services were those of the secretary of the corporations. In none of these cases was the claimant held to be a laborer or servant within the provisions of this act.

The bookkeeper of a manufacturing corporation, who simply records the financial transactions of the concern, without power to direct or manage, was held, in Chapman *v.* Chumar, 54 Hun, 636, to be a servant within § 18 chap. 40 of 1848.

In Williamson *v.* Wadsworth, *ante,* a person employed by a manufacturing corporation as its civil engineer and travelling agent, at a fixed salary, was held to be a servant of the corporation, within the meaning of § 18 of the act of 1848.

One employed by a mining corporation, having its principal place of business at New York city, to act as superintendent of its works, in another locality, with power to hire and pay workmen, and to make contracts for supplies, ores, etc., when and as directed by the company, was held in Krauser *v.* Ruckel, *ante,* not to be a " laborer, servant or operative " within the meaning of § 18, chap. 40 of 1848.

Manual labor, merely incident to his position of general superintendent of the company, did not bring him within the provisions of the statute. Id.; Ericsson *v.* Brown, 38 Barb. 390.

*Act of* 1849.—A consulting engineer, who renders services as such, was held in Ericsson *v.* Brown, *ante,* not to be within the language, policy or reason, of § 10 of the act of Apr. 11, 1849, incorporating the New York and Liverpool U. S. Steamship Company.

*Chap.* 140 *of* 1850.—§ 12, chap. 140 of 1850 provides that " as often as any contractor for the construction of any part of a railroad, which is in progress of construction, shall be indebted to any laborer for thirty or any less number of days' labor performed in constructing said road, such laborer may give notice of such indebtedness to said company, in the manner herein provided, and the said company shall thereupon become liable to pay such laborer the amount so due him for such labor.

The design of the act was to give the laborer a claim upon the company for the amount due him from his employers for thirty days' labor performed by himself, or any number of days less than thirty. The indebtedness must be to a laborer, and for any number not exceeding thirty days' labor performed in constructing the road. And the liability of the company when fixed is limited to the amount so due to such laborer for such labor. Atcherson *v.* T. & B. R. R. Co., 1 Abb. Ct. of Ap., Dec. 13. The whole object was to protect a class of day laborers upon works of this description, who depended mainly upon their own labor, and payments at short intervals, for a subsistence, against the failures and frauds of contractors by whom they were employed ; and not those who might, for convenience or profit, employ the labor of others. Id. The liability of the corporation is restricted to the indebtedness to the laborer for his personal services with implements used by him, for which no extra charge is usually made. Id.

A laborer employing his own team and an assistant, under an agreement therefor with the contractors, cannot recover against the company for the services of the team or the assistant ; nor can he recover even for his own personal services, unless, perhaps, where his agreement for his own services was separate. Id.

The terms " laborer " and " labor " were used, in this section, in their ordinary and usual sense. They necessarily imply the personal service and work of the individual designed to be protected. Balch *v.* N. Y. & O. M. R. R. Co., *ante.* The term "laborer " cannot be construed as designating one who contracts for and furnishes the labor and services of others, or one who contracts for and furnishes one or more teams for work, whether with or without his own services or the services of others to take charge of the teams while engaged in the work. Id.

In Cummings *v.* N. Y. & O. M. R. R. Co., 1 Lans. 68, it was held that, to charge a railroad corporation with liability for the indebtedness of a contractor to his laborers, under § 12, chap. 140 of 1850, the indebtedness must arise from services personally performed by the laborers. Where an action was brought against a company, in the manner provided by that section, to recover for the services of plaintiff's servant and team, rendered upon the defendant's road, for a contractor constructing a portion thereof, the claim was disallowed. Id.

*General Railroad Act of* 1850.—The legislature, by § 10 of the act of 1850, intended to throw a special protection around that class of persons who should actually perform the manual labor of the company. Aiken *v.* Wasson, *ante.* To accomplish this design it is not necessary that the words, "laborers and servants " should receive their broadest interpre-

tation.  Such a construction would scarcely harmonize with the general scope and object of this and similar acts.  In some very extended sense, the directors and other principal officers of the corporation may be considered as its servants.  The word " servants" is qualified, and to some extent limited in its meaning, by its association with the word " laborers," according to the familiar maxim, *noscitur a sociis.*

Precisely where the line should be drawn between the different classes of persons who may perform services for such a company, it may be somewhat difficult to determine.  Id.

In this case, a contractor for the construction of part of a railroad was held not to be a laborer or servant, within the provision of § 10 of the general railroad act of 1850.

In Conant v. Van Schaick, *ante,* it was held that there was no middle ground between restricting § 10 of the railroad act of 1850 to day laborers, and applying it to all persons employed in the service of the company who have not a different proper and distinctive appellation, such as officers and agents of the company.  The engineer, the master-mechanic and the conductor were held to be as fully entitled to its benefits as was the man who shovels gravel.

*Statute of 1885.*—The cases of Krauser v. Ruckel, 17 Hun, 467; Dean v. DeWolf, 16 Id. 186; Hill v. Spencer, 61 N. Y. 274; Wakefield v. Fargo, 90 Id. 213, all arose under an entirely different statute, which is more limited in its language than the act of 1885.  This act not only includes operatives and laborers, but also employees.  The latter term is of broader signification in its general acceptance.  It includes all persons employed, but is restricted to the general description of persons who may be designated as laborers, operatives and employees.  Brown v. A. B. C. Fence Co., 52 Hun, 151.

The signification of the term " employee " was considered in Gurney v. Atlantic, etc., Ry. Co., 58 N. Y. 358.  The court, in this case, probably gave the term, then standing by itself, a broader signification than it would be inclined to place upon it, as it has been used in the statute of 1885.

In Brown v. A. B. C. Fence Co., *ante* a person employed to assist the general manager of a corporation in keeping its books, to clean the office and show room of the corporation and to assist in putting together, taking apart and shipping wire-wicket fence and weaving machines, was held to be an employee within the meaning of chap. 376 of 1885.

In People v. Remington & Sons, 53 Hun, 638, parties entered into an arrangement with defendant, whereby it furnished them room, power, machinery and stock.  They furnished the labor employed in the manufacture of parts of machines and implements manufactured by the defendant.  They employed others to assist them in the performance of such work. In most cases, they personally performed but a small portion of the labor. The men employed were hired, discharged and paid by them and the rate of wages, the price per piece, the time of their service, the particular kind of labor, were all determined by and between them and their employees. They or their men furnished emery, files, tools and oil used by them.

The defendant was to pay them a fixed price for the parts of machines or implements so made, the amount of which was credited to them on defendant's books each month. Such credits included the whole work performed by the men as well as by themselves. They received as profit the difference between the sum paid by defendant and that paid to their men. The defendant established general rules for the government of all persons engaged at work in its shop. And it was held that such parties were not employees, operatives or laborers of defendant, and the sums due them were not wages within chap. 376 of 1885, giving preference to such wages. See People *v.* Remington, 45 Hun, 329.

The superintendent and attorney are not "employees, operatives or laborers," or their earnings, "wages," within the meaning of chap. 376, of 1885. People *v.* Remington, *ante.*

The burden is upon persons claiming preferences to bring themselves, by evidence, within the statute. Id.

The statute confers upon a class of persons, having a specified contractual relation with corporations, new and unusual privileges and securities which diminish the rights and securities of all persons having claims, and not within the favored class. It is in derogation of the common law and should not be extended to cases not within the reason, as well as within the words, of the statute. It should not be given a retroactive effect. Id. A statute favoring one class, at the expense of others, will not be construed to have a retroactive effect, unless it expressly provides that it shall have such effect. Id.; McCahill *v.* Hamilton, 20 Hun, 388; Newcomb *v.* McCall, 94 N. Y. 587.

Wages earned by and due to laborers prior to the passage of this act are not entitled to a preference under it. People *v.* Remington, *ante.*

Neither a salary nor commissions are wages within its meaning. Id.

This, like many similar statutes in this and other countries, was designed to secure the prompt payment of the wages of persons who, as a class, are dependent upon their earnings for the support of themselves and their families. It was not designed to give a preference to the salaries and compensation due to the officers and employees of corporations occupying superior positions of trusts and profit. Id.

A contrary construction would give a preference to all employees, without regard to rank, compensation, mode of employment, manner of payment or length of time during which they had allowed their compensation to remain in arrear. Id. In this way, the wages and compensation due employees might become a large and constantly increasing debt, to be preferred, in case of insolvency, equally with the class of laborers who must, from necessity, rely upon the prompt payment of their earnings. This would work a wrong to the laborers and endanger the claims of all other creditors of the corporation. Id.

*Weekly Payment Law of* 1890.—The word "employee" is often used in a sense much in enlargement of the words "servant, workman or laborer." People *v.* City of Buffalo, 57 Hun, 577. The only attempted legislative definition of the word is contained in the report of the commissioners of the

Code in submitting to the legislature an act entitled " The Civil Code," in the year 1865, but which never has been enacted into a statute.

The word " employee," as used in the body of chap. 388 of 1890, standing by itself, without words of limitation, is sufficient to include, not only persons engaged in manual labor, such as servants and laborers, but also such as may be employed otherwise.   Id.

This statute belongs to a large class of legislation designed for the promotion of the welfare of laborers and workmen, and may be classed with the acts for the limitation upon the employment of children of tender age, the limitation of the hours of labor, the protection of laborers under the acts for the inspection of factories, and acts like chap. 380 of 1889, " To regulate the rate of wages on public works and to define what laborers shall be employed thereon."   In the construction of an act passed for such purpose, the rule of a strict construction is not to be adopted as is done in the case of penal statutes and laws in derogation of the common law.   Nor should the statute be loosely, which is generally called liberally, construed. It should receive that interpretation which will fairly carry out the policy which the statute was enacted to promote.   Id.   It should be construed in accordance with the nature and obvious import of the language used, and not by resort to subtle and forced construction for the purpose either of limiting or extending its operation.   Id.

Notwithstanding the comprehensive meaning which has been accorded above to the word " employee," for the purposes of the construction of this statute, yet the statute may be qualified and restricted by reference to other parts of it and the circumstances and facts existing at the time and to which they relate.   Id.

There is no special reason observable, either from the act itself, or from the preceeding legislation, leading up to it, why the licensed clerk in the mayor's department in the city of Buffalo, or the secretary and treasurer of the park commissioners of that city or a public school teacher or a fireman or patrolman should be paid otherwise than in accordance with the terms of his agreement to his respective employers.   It would be extending the statute beyond the obvious meaning of the legislature in passing it, to apply it so as to cover the cases of these persons.   Id.   It does not apply to persons who receive salary.   Id.