LANG, Appellant, vs. SIMMONS, Garnishee, etc., Respondent.

*November 4—December 1, 1885.*

VOLUNTARY ASSIGNMENT.    *Preferences: " Wages of laborers, servants," etc.*

B. & B. operated a steam wood factory in which men were employed by them, and took contracts for all kinds of light wood work. L. & L. had a contract with them by which lumber furnished by L. & L. was sawed into strips and beaded by B. & B., and L. & L. were to pay them $15 per thousand feet for working up the lumber, and to make payments at the rate of $50 per month. In a voluntary assignment by L. & L., B. & B. were preferred as creditors for the amount due on such contract. *Held,* that B. & B. were not "laborers, servants, or employees" of L. & L., and the amount due them was not "wages," within the meaning of sec. 1, ch. 349, Laws of 1883, and the assignment was therefore void.

APPEAL from the Circuit Court for *Fond du Lac* County.

Garnishment. The facts are stated in the opinion. The issues were tried by the court, which found that the assignment to the garnishee was regular and valid. From a judgment accordingly, dismissing the garnishee proceedings, the plaintiff appealed.

For the appellant there was a brief by *Sutherland & Sutherland,* and oral argument by *Mr. D. D. Sutherland.*

*Elihu Colman,* for the respondent.

TAYLOR, J.  This is a garnishee action, in which *Simmons* is garnishee in the action of the appellant, *William Lang*, against D. C. Lang and J. H. Lang.  The Langs were debtors of the appellant, and the garnishee claims to be the assignee of said debtors under a voluntary assignment made by the Langs before the garnishee action was commenced. The only question in the case is whether the assignment is void, under our statutes, as to the appellant, a creditor of the assignors at the time the assignment was made.

The learned counsel for the appellant urge that the assignment is void for three reasons:  (1) That it is void under our laws, because it prefers one of the creditors of the assignors for a debt due from them which was not due for the wages of laborers, servants, or employees of the assignors.  (2) That it is void because it conveys both the firm property and the individual property of the assignors, and directs the payment of all creditors equally.  (3) The assignment is void for uncertainty because the schedule of creditors who were preferred as laborers, servants, and employees did not, when the assignment was made, and before the schedule was filed, state the sums due to each of them.

The facts in regard to the preferred creditors in the assignment, which the appellant claims render the assignment void, are as follows:  Among the creditors preferred are Bates & Barrett, who are preferred for the sum of $150. The evidence shows that Bates & Barrett operate a sort of variety wood-works in Fond du Lac and take contracts for all kinds of light wood-work.  They have a shop or factory run by steam-power, and have men at work for them in such shop or factory.  The assignors had a contract with Bates & Barrett to do certain work for them.  The assignors furnished hard-wood timber, which Bates & Barrett sawed into strips and beaded for the assignors; and the strips so prepared were used by the assignors in their business as trunk-makers.  The arrangement between the assignors and

Bates & Barrett was in substance this: Assignors furnished rough timber or planks, and Bates & Barrett were to saw and work up the timber according to the direction of the assignors. They were to pay Bates & Barrett $15 per thousand feet for working up the lumber; and they made payment to Bates & Barrett at the rate of $50 per month. When the assignment was made, the assignors were indebted to Bates & Barrett for work done under such an arrangement in the sum of $150. How long the debt had been accumulating was not made certain by the evidence. The counsel for appellant claim that the assignment is void because by its terms this debt of Bates & Barrett is a preferred debt.

Sec. 1, ch. 349, Laws of 1883, reads as follows: "Any and all assignments hereafter made for the benefit of creditors, which shall contain or give any preference to one creditor over another creditor, *except for the wages of laborers, servants, or employees, earned within six months prior thereto, shall be void.*" Sec. 2, ch. 48, Laws of 1885, reads as follows: "In every voluntary assignment hereafter made for the benefit of creditors, *the claims of all servants, clerks, or laborers for personal service or wages owing from the assignor for services or labor performed for three months preceding such assignment,* shall be preferred over the claims of all other creditors, and shall be paid first by the assignee after the payment of costs, debts due the United States or the state of Wisconsin, all taxes and assessments levied and unpaid, expenses of the assignment and executing the trust."

It will be seen by reading these two sections of our laws that it is the policy of this state to prevent all preferences in the payment of debts due from the assignors in case of an assignment for the benefit of creditors, except that in the act of 1883 a preference may be declared by the assignor in favor of money due for " the wages of laborers, servants, or employees earned within six months previous to the

making of the assignment;" and the law of 1885, without any declaration on the part of the assignor, makes the claims of all servants, clerks, or laborers for personal service or labor performed for the assignors within three months preceding the assignment, preferred claims, to be paid in preference to all others except those mentioned in said last-named act. The assignment in this case was made before the enactment of the law of 1885, above quoted, and it is only quoted to show the policy of the legislature in protecting and preferring the claims of laborers, servants, and employees of persons making assignments.

It is claimed that, notwithstanding the act of 1883 declares the assignment shall be void if any preference is declared thereby except as permitted by said act, the ends of justice would be promoted by simply declaring the preference illegal and void, and upholding the assignment notwithstanding the illegal preference. It may be that it would have been better had the legislature so declared, and that such a declaration would have better promoted the ends of justice; but the fact remains that the legislature has declared that the assignment shall be void, and not the provision of the assignment giving the preference. We can do nothing but see that the law is executed as enacted; and if the claim of Bates & Barrett preferred in this assignment is not a claim for wages within the meaning of said sec. 1, ch. 349, Laws of 1883, then the assignment must be held void by this court, as the legislature says it shall be held void in such case. Whether the act of 1885, which, without the will or declaration of the assignor, prefers the claims of laborers, etc., earned within three months previous to the assignment, repeals the provisions of the act of 1883 which allows the assignor to prefer like claims earned within six months previous to the assignment, is a question not raised by the facts presented in this case as stated above. This assignment was made before the act of 1885 took effect.

The material questions are, Were Bates & Barrett laborers, servants, or employees of the assignors? and Was the money due them for wages as such laborers, servants, or employees of the assignors earned within six months previous to making the assignment? We think these questions must be answered in the negative. The money due from the assignors to Bates & Barrett was not for "wages," within the ordinary meaning of that word as defined by the lexicographers. Webster defines the word "wages" as "a compensation given to a hired person for his or her services." In the Imperial Dictionary it is defined as follows: "In ordinary language the term 'wages' is usually restricted to sums paid as rewards to artisans, to domestic servants, to laborers employed in manufactures, in agriculture, mines, and other manual occupations." Worcester says: "In ordinary language the term 'wages' is usually employed to designate the sums paid to persons hired to perform manual labor." It is very clear that the money due from the assignors to Bates & Barrett was not due for "wages," within the definition of the word above given. They were not persons hired by the assignors to do manual labor for them, nor were they hired persons within the ordinary sense of the words "hired persons." They were manufacturers, doing business for themselves, and employing other persons, as well as machinery, to accomplish the work they contracted to do for others. The compensation they received for the work done by them was not so much for the manual labor performed by them or their servants as it was for the use of the machinery by which the work was accomplished.

Neither were Bates & Barrett the servants, laborers, or employees of the assignors within the ordinary meaning of these terms. Webster defines the word "servant" as "a person who is employed by another for menial offices or for other labor, and is subject to his command; a person who labors or exerts himself for the benefit of another, his master

or employer; a subordinate helper." In the Imperial Dictionary the word "servant" is defined as "a person that attends another for the purpose of performing menial offices for hire, or who is employed by another for such offices or other labor, and is subject to his command. The word is correlative to master." Worcester says "servant" is "one who serves; correlative of master." Bates & Barrett were in no sense servants of the assignors in doing the work they did. They were contractors, and they had the entire control of the work to be done, and were in no way subject to the control or direction of the assignors while performing the work they contracted to do for them. Nor were they laborers or employees of the assignors in the sense that they were earning wages of such assignors for the work to be done by them. We think it very clear that servants, laborers, or employees who can be said to earn wages of an employer must hold such a relation to the employer that he can direct and control them in and about the work which they are doing for him. As said above in this case, Bates & Barrett held no such relation to the assignors while performing their contract with them, and the money due them for the work performed was not wages earned within the meaning of the statute.

This statute was lately considered by the district court of the United States for the eastern district of this state in the case of *Campfield v. Lang*, 25 Fed. Rep. 128, and in a very clear and concise argument the learned district judge reached the same conclusion as we have in the case at bar. The following cases cited by the learned counsel for the appellant sustain the conclusion we have reached in this case: *Heebner v. Chave*, 5 Pa. St. 115; *Peck v. Miller*, 39 Mich. 594; *Dean v. De Wolf*, 16 Hun, 186; *Hill v. Spencer*, 61 N. Y. 274; *Pennsylvania & D. R. Co. v. Leuffer*, 84 Pa. St. 168; *Smith v. Brooke*, 49 Pa. St. 147; *Sullivan's Appeal*, 77 Pa. St. 107; *Gravatt v. State*, 25 Ohio St. 162; *Wells v.*

AUGUST TERM, 1885.    531

Thompson and another vs. The Western Union Tel. Co.

*Southern Minn. R. Co.* 1 Fed. Rep. 270; *State ex rel. Peck v. Rusk*, 55 Wis. 465.

The assignors having in their assignment preferred a debt due to one of their creditors contrary to the provisions of sec. 1, ch. 349, Laws of 1883, the assignment is void and the assignee had no title to the property described in such assignment, or the money derived from the sale thereof, as against a creditor of the assignors.

The other exceptions taken to the assignment need not be considered, as the one first taken is fatal to it and entitles the appellant to a judgment against the garnishee.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.