GEORGE G. MANNING, THEODORE MANNING, JOSEPH A. MANNING AND N. WILLIS AMSDEN, Respondents, *v.* LOUIS P. BECK, WILLIAM H. BECK AND H. ISRAEL WEINBERG, Appellants.

*Assignment for creditors — when rendered void by previous acts done to give a preference to certain of the assignor's creditors — chap. 503 of 1887.*

In an action brought to set aside a general assignment for the benefit of creditors, it appeared that the assignor, on January 3, 1889, transferred by bill of sale all his stock of goods and fixtures to his son for a sum representing ninety per cent of the inventoried value of the stock and seventy per cent of the cost of the fixtures, which consideration was paid — $5,754.85 thereof by the satisfaction of an alleged indebtedness owing by the assignor to his son; $743.63 by the sons' assuming the payment of certain back rent due upon the store; $855.10 by the assumption by the son of three notes made by the assignor and indorsed by himself; $118.23 in cash, and the residue by twelve promissory notes corresponding exactly with twelve other promissory notes then outstanding and owing by the assignor as maker, which last-mentioned twelve notes given by the son were severally transferred to the holders of the twelve notes which had been theretofore given and were then owing by the assignor.

On January 4, 1889, the general assignment was executed.

*Held,* that although the assignment for the benefit of creditors was without preference in name, the assignor did, by the above transaction, give a preference which was contrary to the provisions of chapter 503 of the Laws of 1887.

That the execution of the bill of sale, followed so closely by the formal act of executing an assignment for the benefit of his creditors, constituted an attempt on the part of the debtor to so place his property that none of the creditors, other than the favored ones, could share in the same.

That the claim that there was no fraud in the assignment, but that the acts complained of were those of the debtor previous to the assignment, could not be maintained as the creditor was at liberty to attack the assignment itself where it was made by the assignor with a fraudulent intent, whether such intent was disclosed by the contents of the assignment itself or by cotemporaneous acts of the debtor.

*Loos* v. *Wilkinson* (110 N. Y., 210) distinguished.

Appeal by the defendants from an order made at the Monroe Special Term, and entered in the Monroe county clerk's office April 10, 1889, granting an injunction and continuing the stay theretofore previously made on an order to show cause why the injunction should not be granted, and also from a subsequent order of April 13, 1889, made for the appointment of a receiver, and

directing the defendants to turn over certain property to such receiver and to account to him therefor.

*H. H. Woodward*, for the appellants.

*E. F. Wellington*, for the respondents.

Macomber, J.:

The object of this action is to set aside the general assignment for the benefit of creditors, made by the defendant Louis P. Beck to the defendant H. Israel Weinberg.

On the 3d day of January, 1889, the defendant Louis P. Beck, by a bill of sale, transferred all of the stock of goods and fixtures in his store, consisting of a general assortment of boots and shoes, to the defendant William H. Beck, who is his son, for the expressed consideration of $11,977.32, being supposed to represent ninety per cent of the inventoried value of the stock and seventy per cent of the cost of the fixtures. Payment was made as follows — $5,754.85 by the satisfaction of an alleged indebtedness owing by Louis P. Beck to his son William; $743.63 by William's assuming the back rent of the store which was owing by Louis P. Beck to the defendant Weinberg; $855.10 by William's like assumption of three outstanding notes made by his father, Louis P. Beck, and indorsed by himself; $118.23 in cash and the residue of such purchase-price was represented by and included in twelve promissory notes made by William, varying in amounts and differing in times of payment. These twelve notes correspond exactly with twelve other promissory notes then outstanding, owing by Louis P. Beck as maker, and were so drawn, with one or two exceptions, as that each should mature at the same time that the note for which it was given should mature. These notes were severally transferred to the holders of the antecedent notes.

One day thereafter, namely, on the 4th day of January, 1889, the above transaction being supposed to have been completed, the defendant Louis P. Beck executed and delivered to H. Israel Weinberg, the general assignment for the benefit of creditors already mentioned, which was recorded on the following day. The defendants, and each of them, so far as disclosed by the affidavits, stand upon the legality of the original sale by the father to the son, and

claim that there still remains for distribution among the creditors no more than was actually received by the assignee, which is an amount that will scarcely pay the expenses of administering upon the estate, though the same is stated in the inventory to be of the value of about $3,000.

From the relations existing between Louis P. Beck and his son William it is quite true that each knew substantially the financial condition of the other. On the 31st of October, 1888, the father had executed to his son a chattel mortgage to secure an alleged indebtedness then existing in the form of notes, which mortgage contained a provision that the mortgagor might sell for cash, as agent of the mortgagee, and pay the proceeds to the latter to be applied upon outstanding notes. A subsequent mortgage was given on the 3d day of December, 1888. Neither of these chattel mortgages was filed, and the same, so far as the affidavits show, remained a matter of personal confidence between the parties thereto. An attempt seems to have been made to give the possession of this property into the hands of William under these mortgages, but the same was ineffective because the mortgagor still made sales of the stock in trade, bought new stock and handled the same substantially as he had theretofore done; though in form, but not in substance, the proceeds of such sales were turned over to the mortgagee William, and the same were ostensibly reloaned to the father, from day to day, to enable him to carry on the business. The answer of the defendant Louis P. Beck alleges that on the 31st day of December, 1888, William surrendered to him the store and kept no further account of sales or of moneys received there on any account, and that the said chattel mortgages were canceled. During the time that William was nominally in possession of the store and property, Louis P. Beck purchased, on credit, goods to the amount of $2,931.84, of which $1,441 thereof was purchased from the plaintiff, the sellers having no knowledge of the existence of the chattel mortgage or of the relation of William thereto.

Though the assignment for the benefit of creditors is without preferences in name, the assignor did, by the above transaction, effect a preference which is contrary to the act of 1887. (Laws of 1887, chap. 503.) The bill of sale by which the son William was enabled to take, substantially, all of the property of the debtor

must be deemed to be a part of a general scheme of the assignor to give an unlawful preference to his son. The execution of this bill of sale followed so closely by the formal act of executing an assignment for the benefit of creditors, must be regarded as an attempt on the part of the debtor so to place his property that none of the creditors other than the favored one should share in the same. That this was an attempted mode of eluding the laws is corroborated by the fact that the assignee himself stands in the relation of a preferred creditor, inasmuch as he was the recipient of a payment of the indebtedness due him for rent before the execution and acceptance by him of the assignment. Under these circumstances, it would not be supposable that he would be solicitous to or that he would, in fact, bring an action to set aside any of these acts of his assignor upon the ground that they were a fraud upon the assignment.

The counsel have argued that there is no fraud in the assignment, but that whatever acts are justly complained of were those of the debtor preceding the assignment, and that these may be set aside and declared of no effect by suitable action in equity. It is true that when there is fraud upon an honest assignment, by prior fraudulent transfers of property by the assignor, or by a subsequent withholding of property from the assignee, a remedy is given to the assignee which may avoid the fraudulent acts and secure all the property of the assignor for distribution under the assignment. (*Loos* v. *Wilkinson*, 110 N. Y., 210.) This principle, however, does not prevent a creditor from attacking the assignment itself where it was made by the assignor with a fraudulent intent, whether such intent be disclosed by the contents of the assignment itself, or by cotemporaneous acts. Where there is a voluntary surrender by an insolvent debtor of dominion over his entire estate, as was substantially done in this instance, and the transfer of the whole, or substantially the whole, of his property to a portion only of his creditors in order to give them a preference over others, whether made by one instrument or more, whatever form the same may take, when such transfer operates as an unlawful preference, in fact, the assignment itself may be assailed by a creditor, and the same set aside as a fraud upon the act. *White* v. *Cotzhausen* (129 U. S., 329), where the language of the court, by Justice Harlan (page 336), is peculiarly applicable

to the facts disclosed in this case : "After he had executed the con-
veyances, bill of sale, warrant of attorney and transfers, to which refer-
ence has been made, he was left without anything that could be reached
by Cotzhausen. So completely was he stripped by these transactions of
all property that, subsequently, when his deposition was taken he
admitted that he owned nothing, except the clothing he wore.
He recognized his hopelessly insolvent condition, and formed the
purpose of yielding to creditors the dominion of his entire estate.
And it is too plain to admit of dispute that in executing to his
mother, sisters and brother the conveyances, bill of sale, warrant of
attorney and transfers in question, his intention was to give them,
and their intention was to obtain a preference over all other cred-
itors. What was done was in execution of a scheme for the appro-
priation of his entire estate by his family to the exclusion of other
creditors, thereby avoiding the effect of a formal assignment."

The order appealed from should be affirmed, with ten dollars
costs and disbursements.

BARKER, P. J., and DWIGHT, J., concurred.

Order affirmed, with ten dollars costs and disbursements.