## MANNING *et al. v.* BECK *et al.*

*(Supreme Court, General Term, Fifth Department.*  January 23, 1891.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—EXCESSIVE PREFERENCE.

An insolvent debtor gave a bill of sale of his stock of goods, comprising four-fifths of his estate, to his son, a large part of the consideration being an alleged existing indebtedness.  On the day after the execution of the bill of sale the debtor executed a general assignment for the benefit of creditors.  *Held,* an attempt to create a preference, in violation of Laws N. Y. 1887, c. 503, (4 Rev. St. 8th Ed. p. 2542, § 30,) which permits preferences only to the extent of one-third of the debtor's estate to pay wages of employes, and that the assignment would be set aside at the suit of a creditor.  Following 7 N. Y. Supp. 215.

2. SAME—VALIDITY TO EXTENT ALLOWED BY LAW.

Excessive preference created by an assignor for the benefit of creditors with the fraudulent intent of evading the law renders the assignment absolutely void; and the rule that excessive preferences, when innocently created, may be sustained to the extent allowed by statute, does not apply to such a case.

Appeal from special term, Monroe county.

Action by George G. Manning and others against Louis P. Beck and others to set aside a bill of sale and a general assignment for the benefit of creditors made by defendant Louis P. Beck.  The following opinion was delivered by ADAMS, J., at special term:

"The above actions were tried together, and, as they are dependent upon the same facts, as well as the same principles of law. they may be disposed of in like manner.  The evidence clearly establishes, and it is virtually conceded, that on the 4th day of January, 1889, the defendant Louis P. Beck, who was then engaged in business as a boot and shoe dealer in the city of Rochester, executed and delivered to the defendant Weinberg a general assignment for the benefit of his creditors, by which he transferred and assigned all of the estate he then possessed, amounting in value to the sum of about $3,000. This assignment contained no preference; but on the day prior to its execution the assignor transferred to his son, the defendant W. H. Beck, by a bill of sale, the greater portion of his estate, consisting of his stock of goods, fixtures, etc., which amounted in value to the sum of about $11,977.32.  The consideration for the transfer of this property was made up as follows, viz.: By the surrender of notes amounting in value to the sum of $4,754.85, which William H. held against his father, the assumption of the back rent upon the store formerly occupied by his father; which was due the defendant Weinberg, and which amounted to $743.64; the assumption of the payment of these notes indorsed by the son for the accommodation of his father, held by various parties to whom his father was indebted, and amounting in the aggregate to $855.10; the payment of the sum of $118.23 in cash, and the execution and delivery to his father of twelve promissory notes, amounting in all to $5,505.50. These last-mentioned notes were made by William H. Beck to the order of his father, Louis P. Beck, and with two exceptions were made for the precise amounts, and so as to mature at the same time as certain outstanding notes which had been indorsed by various parties for the accommodation of Louis P. Beck.  They were subsequently, and prior to the execution of the assignment, delivered to the several indorsers, from whom receipts were taken, by which they respectively agreed to take up and surrender at maturity the notes of corresponding amounts upon which they were liable; the design obviously being that the indorsers should pay at maturity the notes upon which they were severally liable, and look to William H. Beck for reimbursement out of the property transferred to him by his father.  The two notes not included in this arrangement were for $600 and $1,000, respectively, and were transferred to Elizabeth Rehm and Caroline Beck, the wife of Louis P. Beck; and they at the same time surrendering other notes which they held against him for like amounts.  Thus it will be seen that the entire estate of the defendant Louis P. Beck, with the exception of about $3,000, or one-fifth part thereof,

was disposed of by this bill of sale for the express purpose of paying certain of his creditors to the exclusion of others. In other words, by a cunningly devised scheme he sought to accomplish by indirection that which he was prohibited from doing by the statute.[1] There are many facts and circumstances developed by the evidence in the case other than those already adverted to which tend very strongly to show that this scheme was one that had been maturing for some time; that both father and son were parties to it; and that, if the defendant Weinberg was not an active participant therein, he certainly profited by it as a preferred creditor, and for that reason, if for no other, could hardly be expected to make any very strenuous efforts to thwart it. That a transfer of property made under such circumstances, and with such an intent, was in fraud of the general assignment, and consequently void, is a proposition concerning which there is scarcely room for two opinions, and for which there is abundant authority. *Spellman* v *Freedman,* 7 N. Y. Supp. 698, and cases there cited. It is true that the plaintiffs might have called upon the assignee to bring an action to set aside such a transfer, and in case of his refusal or failure to do so they might have instituted one themselves for that purpose, but they were not limited to this remedy. The execution of the bill of sale was but one act in the scheme by which the debtor hoped to be able to surrender his entire estate into the hands of certain of his creditors for their benefit, to the exclusion of the remaining creditors. The execution of the general assignment was another, which, standing by itself, would probably excite no criticism, but which, considered in the light of the former and other contemporaneous acts, is seen to be an important factor in the attempted fraud, as well as in the result sought to be accomplished. It follows, therefore, that if these acts were contemporaneous, and are but parts of a great scheme by means of which the plaintiffs are to be defrauded of their rights, this action may be maintained, and the bill of sale, as well as the assignment, may be declared fraudulent and void as against them. This was the view taken by the general term on the appeal from the order granting the injunction herein, (see opinion, MACOMBER, J., 7 N. Y. Supp. 215;) and the additional evidence brought out upon the trial seems to strengthen, rather than weaken, the ground upon which that decision rests. It is insisted by the defendants' counsel that, even if the bill of sale is to be regarded as part of the assignment, by means of which creditors are preferred in excess of the amount authorized by the act of 1887, it is nevertheless to be deemed valid to the extent contemplated by the statute. This would undoubtedly be the case if the excessive preferences had been created innocently, but when they are the result of a fraudulent intention to evade the law, and to accomplish that which the law prohibited, no such rule can be invoked. The entire transaction is tainted by the fraud in which it was conceived, and is consequently absolute void. The plaintiffs are entitled to the relief sought, with costs."

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*H. H. Woodward,* for appellants Louis P. Beck and H. Israel Weinberg. *H. B. Hallock,* for appellant W. H. Beck. *Edward F. Wellington,* for respondents.

PER CURIAM. Judgment appealed from affirmed, with costs, on the opinion of the special term, and on that of this court, reported in 7 N. Y. Supp. 215.

[1] Laws N. Y. 1887, c. 503, permits preferences to the extent of one-third of the assignor's estate for the purpose of paying wages of employes, etc.