### CLARK *v.* ANDREWS *et al.*

*(Common Pleas of New York City and County, General Term.* May, 1892.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—PREFERENCES—SALARY DUE EMPLOYE.

   An assignment for the benefit of creditors contained a preference in favor of a woman, represented to be the assignor's employe, but reputed to be his wife, and bearing his name, for wages earned during a period of three years, her entire alleged term of service, amounting to the exact sum stated as the value of the assets. During said term she went on excursions to a distant state without asking leave, whenever she chose to do so; the assignor testifying that he was "not her boss," and that she was not under his control. Although her wages were claimed to be payable weekly, she testified that she had never drawn her salary, and that she "let it go into the store," because she wanted "to increase the business." *Held,* that the preference was not allowable, under Laws 1886, c. 283, (4 Rev. St., 8th Ed., p. 2542,) which permits "salaries actually owing to the employes of the assignor" to be preferred, since, if the relation of master and servant did actually exist, upon her allowing the money due her to be used in the business her claim was not for wages, but for a loan.

2. SAME—DEBT CONTRACTED UNDER AGREEMENT TO PREFER CREDITOR.

   A preference in an assignment for benefit of creditors is fraudulent, though the debt was contracted under an express agreement that the creditor should be protected "under any circumstances."

Appeal from equity term.

Action by Cyrus Clark against Proctor H. Andrews and another to set aside an assignment for the benefit of creditors. From a judgment for defendants, plaintiff appeals. Reversed.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Eldon Bisbee,* for appellant. *George R. Carrington* and *Uriah W. Tompkins,* for respondents.

PRYOR, J. We fully share the anxiety avowed by the learned trial judge to annul this assignment, but we are more fortunate than he in assuring ourselves of sufficient legal ground for the gratification of our common desire. On the rendition of the verdict in favor of the plaintiff, the defendant assignor's counsel asked and obtained a stay of 20 days, ostensibly for the purpose of an appeal or new trial. But neither was an appeal taken nor a new trial moved. Pending the stay, plaintiff's counsel was lulled into security and inaction by assurances from the attorney of defendant that his means were abundant and his purpose sincere to pay the debt. Instead, however, of discharging the verdict, four days before the expiration of the stay the debtor made an assignment by which, in fact, every penny of his property was appropriated to the benefit of a single creditor, avowing as the motive of the assignment the laudable desire to distribute his assets for the equal satisfaction of all his creditors. It is a question whether, without more, the assignment be not invalidated. *Jaques* v. *Greenwood,* 12 Abb. Pr. 234; *Clark* v. *Taylor,* 37 Hun, 312. And who was it to whom the debtor thus devoted his entire estate, to the deprivation of all other creditors? A woman whom he represented to be an employe, but whom neighbors regarded as his wife, and called by his name: who purchased part of the property at the assignee's sale; and with whom, shortly after, the assignor resumed business, in apparently as good a plight as before the assignment. And what was the pretended debt thus preferred, in effect, to the exclusion of all other creditors? A claim for wages during the entire service of the alleged employe, a period of three years, not a penny of which, though payable weekly, had she ever received or even requested, and the amount of which was the exact sum that, in the assignment, the assignor stated to be the actual value of his assets, namely, $750.

Considering the facts of the case, which we only sketch in outline, and bearing in mind the intimate and confidential relations of the assignor to the favored creditor, is it possible to resist the conclusion of a combination be-

tween them to reserve to the assignor the benefit of the assigned property or its proceeds, in fraud of the other creditors? That alone would suffice for the condemnation of the assignment. *Elias* v. *Farley*, 42 N. Y. 398; *Berry* v. *Riley*, 2 Barb. 307; *Grover* v. *Wakeman*, 11 Wend. 187; *Haydock* v. *Coope*, 53 N. Y. 68. True, the assignor and his favored friend protest the innocence of their acts and intentions; but of what avail is the disclaimer, in view of the glaring contradictions in their testimony? The assignor swears that, while he and the woman whom he prefers were living together, he lodged and boarded her; but this she indignantly denies, and declares that she lodged and boarded him, and he subsequently admitted the incorrectness of his statement. In the answer and in his testimony he says he made preferential provision for the claim of Underhill and Clinch, because they lent him the money in an emergency; while in his schedule he swears that the debt was for mer chandise bought. He testifies that he allowed Mrs. Irwin no more for wages because "she did not ask it," and because "she wanted to be a little lenient;" and then he swears that he had no talk with her in advance about the assignment, and she says that she did not know of it until made. In the assignment he swears that the amount due Mrs. Irwin for wages was $750; in his schedule he swears that it was only $644,—a reduction obviously made to leave a margin of assets for the costs and expenses of the trust, at the hazard otherwise of exposing the assignment to defeat. No wonder the learned trial judge declared that the testimony of the assignor was "of such a nature that but little reliance could be placed upon it." The learned trial judge concluded that the evidence created nothing more than a vehement suspicion of fraud in the assignment; but with us it is persuasive of fraud, beyond a rational doubt. Fraud in such a transaction is seldom shown by direct and positive testimony; but circumstantial evidence suffices to prove the fact, if it appear the more probable inference. But, in our judgment, the transaction of the assignment is vitiated by other infirmities, still more clearly fatal to its validity. In subordination to the provision for Mrs. Irwin, Underhill and Clinch were preferred to the amount of $150. We have already adverted to the assignor's contradictory stories of this alleged indebtedness. But, be it valid or otherwise, the assignor testifies that, when he borrowed the money of Underhill and Clinch, he promised them that they should have it again in any event. "I preferred them because I had borrowed money of them, and was bound to pay them. They helped me on a pinch. Payment was not quite due. That was borrowed money, and I consider that sacred. I promised that they should have their money under any circumstances,"—meaning, beyond question, that in the event of insolvency he would secure their claim in preference to less "sacred" obligations. In *Bank* v. *Whitmore*, 40 Hun, 499, 502, the general term of the supreme court in this department condemned an assignment because of a promise by a debtor to protect his creditors, if necessary, by a preferential provision; ruling that "a debtor will not be permitted, at or before the time the debt is created, by a secret, tacit agreement or understanding with one or more of his creditors, to make an engagement in reference to his property by which their debts shall, in case of emergency, be preferred under any and all circumstances." And the same point was adjudicated by GRESHAM, J., of the United States circuit court, in *Smith* v. *Craft*, 11 Biss. 340, 12 Fed. Rep. 856. Plainly, these authorities apply to the case at bar, and avail to avoid the assignment in controversy.

But the assignment is bad for a still more decisive reason. It is extremely questionable whether Mrs. Irwin, in securing whose alleged wages the entire estate is absorbed, was an "employe" in the sense of the act of 1886.[1] She associated with the assignor upon terms of equality, if not of ascendency; she went and came of her own volition; making excursions to

---

[1] Laws 1886, c. 283, (4 Rev. St., 8th Ed., p. 2542.)

Florida without so much as asking leave of her alleged employer; he expressly disclaimed all command of her. "I was not her boss. She was not under my control. She could go if she wanted to." She put money in the business, and she presided over their domestic establishment. Observing the evident object of the statute, namely, the protection of needy dependents, was this woman within its beneficent policy? *Lang* v. *Simmons*, 64 Wis. 525, 25 N. W. Rep. 650. Assuming, however, that Mrs. Irwin, so situated, may still demand the protection of the statute, we confidently affirm that her claim was not for money due as wages or salary. The statute prescribes that "the wages or salaries actually owing to the employes of the assignor at the time of the execution of the assignment shall be preferred before any other debt." Now, for the entire term of her so-called employment,—three years, —this preferred creditor never drew a penny of her so-called wages or salary. "I have never drawn any of my salary. I let it go into the store, because I wanted to increase the business, instead of drawing my salary. I had my wages turned into the business." Here, in legal effect, was a loan of the money due for wages or salary, and her claim upon the assignor was for money lent. The effect of the transaction is precisely the same as if she had drawn the money, and then returned it to him, namely, to convert the claim for wages into a debt for money lent. *Jerome* v. *Morgan,* 13 Daly, 225; *In re Hooper's Estate,* (Sup.) 11 N. Y. Supp. 241; *Freeman* v. *Brittin,* 17 N. J. Law, 206; *Payne* v. *Gardiner,* 29 N. Y. 167, 168. Thus, on the false pretense of a debt due to Mrs. Irwin for wages or salary, the assignor wrested every dollar of his property from the grasp of other creditors; and, as the inevitable effect of upholding the assignment would be to hinder, delay, and defraud those creditors, it is necessarily void. *Coleman* v. *Burr,* 93 N. Y. 17, 31; *Manning* v. *Beck,* (Sup.) 7 N. Y. Supp. 215; *Bank* v. *Bard,* (Sup.) 13 N. Y. Supp. 688; *Stafford* v. *Merrill,* (Sup.) 16 N. Y. Supp. 467; *Beatty* v, *Soman,* 6 N. Y. St. Rep. 669; *In re McCallum,* 10 Daly, 72. Judgment reversed, and new trial ordered, costs to abide event.